817 F.2d 1429
 60 A.F.T.R.2d 87-5012, 87-2 USTC P 9461
 UNITED STATES of America, Plaintiff-Appellee,
v.
OIL RESOURCES, INC., Successor in Interest to National
Hospital Corporation, Capital Energy Corporation, Donald E.
Liederman, Earl M. Cranston, Richard C. Hoefle, J.C.
Thompson, Richard Lee Marks and James A. Murphy, Defendants-
Appellants.
 No. 83-5969.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 1, 1986.
Decided May 27, 1987.
 
 Teresa E. McLaughlin, Washington, D.C., for plaintiff-appellee.
 Michael A. Duckworth, Los Angeles, Cal., John Sobieski, Los Angeles, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before CHAMBERS, HUG, and FLETCHER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Oil Resources, Inc. transferred all of its assets and liabilities to Capital Energy Corporation in exchange for Capital stock. Oil Resources distributed the Capital stock received in the transaction to its shareholders, and Oil Resources was dissolved. Among the liabilities assumed by Capital were amounts owed to the United States for taxes unpaid in earlier years. The United States brought suit against Capital, Oil Resources, and Oil Resources shareholders and directors for recovery of those amounts. The district court found Capital liable for the tax obligations on the grounds that (1) Capital expressly assumed Oil Resources' obligations; (2) the transaction constituted a de facto merger; (3) Capital was a "mere continuation" of Oil Resources; and (4) the exchange amounted to a fraudulent conveyance. The court also found the former Oil Resources shareholders liable because they received assets of the dissolved corporation that the court concluded should have been applied to the debt.
 
 
 2
 Capital concedes that it is liable for Oil Resources' tax obligations under the first three grounds, but asserts that the district court erred in finding the conveyance to be fraudulent. We agree and reverse this finding of the district court. We also reverse the district court's holding that the shareholders are liable, and remand for consideration of whether there was adequate provision for payment of the tax liabilities.
 
 BACKGROUND
 
 3
 In 1977, Oil Resources, Inc. and Capital Energy Resources (then Capital Reserve Corporation) entered into an Agreement and Plan of Reorganization. Oil Resources agreed to sell assets worth approximately $11.5 million to Capital in exchange for 2,733,333 shares of Capital common stock. The district court found that the Capital shares were worth between $3 and $3.85 per share at the time of the transfer of assets. There is no dispute that Capital also agreed to assume about $2.4 million of Oil Resources' liabilities. These included nearly $782,000 in tax liabilities for 1968, 1969, and 1971, which Oil Resources had inherited in 1971 as successor-in-interest of another corporation. Pursuant to the Agreement, Oil Resources distributed the Capital stock to its shareholders, who were required to relinquish their shares of Oil Resources stock. Oil Resources then dissolved. The shareholders of Oil Resources approved the Agreement on November 17, 1977. Capital has continued the business operations of Oil Resources.
 
 
 4
 The United States filed suit in 1982 against Capital, Oil Resources, and Oil Resources shareholders to recover federal income taxes owing, and to foreclose on liens it had obtained on Oil Resources property under 26 U.S.C. Secs. 7402, 7403 (1982). The individual defendants had been shareholders and directors of Oil Resources at the time of its dissolution, except for one who had been a director and secretary of the corporation but not a shareholder. As of March 31, 1982, the tax deficiencies, along with penalties and interest, amounted to $1,311,963.81. The district court granted the United States' motion for summary judgment and found that Capital was liable for the full amount. It also awarded monetary judgments totaling $2,998,519.81 against the five individual defendants who had been shareholders of Oil Resources, and provided for liens in favor of the United States against the personal and real property of all of the former Oil Resources directors.
 
 
 5
 We review de novo the district court's grant of summary judgment. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). The district court treated this action as one to collect an existing tax liability of the transferor of an asset from a transferee, which is provided for in the Internal Revenue Code at 26 U.S.C. Sec. 6901(a)(1982). State law governs the liability of a transferee under that section. Mayors v. Commissioner, 785 F.2d 757, 759 (9th Cir.1986). California law governs this case.
 
 DISCUSSION
 I. Liability of Capital
 
 6
 The district court found that Capital expressly agreed as part of the reorganization plan to assume the federal tax liability of Oil Resources. It found also that the reorganization was a de facto merger of the two corporations, and that Capital was a "mere continuation" of Oil Resources. The parties do not dispute these findings. Under California law, Capital would be liable for the tax as the continuing entity or, simply, as the entity that has assumed the obligations of another for consideration. See Ray v. Alad Corp., 19 Cal.3d 22, 28, 560 P.2d 3, 136 Cal.Rptr. 574 (1977). The court went on to find, however, that the transfer of assets between the two corporations was fraudulent, and could therefore "be set aside or disregarded to permit the United States to satisfy its claim." Findings of Fact at 7. A finding of fraud in the transaction provides an additional, and in this case entirely unnecessary and erroneous ground for the conclusion that Capital assumed the debts of Oil Resources. We are persuaded that the district court's finding of fraud has no basis in fact or law, and accordingly reject the conclusion that the reorganization was invalid and could be disregarded.
 
 
 7
 The district court based its conclusion that the transfer of assets from Oil Resources to Capital was a fraudulent conveyance on Cal.Civ.Code Sec. 3439.04 (West Supp.1987). That section currently provides:
 
 
 8
 A transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation as follows:
 
 
 9
 (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
 
 
 10
 (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
 
 
 11
 (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
 
 
 12
 (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they become due.[1]
 
 
 13
 The court made no findings as to the intention of the parties to the reorganization plan, and we have no reason to think that the transfer of assets was made with any intention to defraud. As to the sufficiency of consideration, the record shows that Capital received about $11.5 million in assets and about $2.4 million in liabilities, or about $9 million in value. It exchanged 2,733,333 of its own shares, which the district court found were valued between $3 and $3.85 a share--a total value of between $8.2 and $10.6 million. On this record it is impossible to conclude that the transaction was without adequate consideration on either side. "One who transfers property to a corporation and in exchange for it receives all of the stock of the corporation, or even a substantial part of it where the corporation has other substantial assets, has received a valuable consideration for the property...." Enos v. Picacho Gold Mining Co., 56 Cal.App.2d 765, 133 P.2d 663, 670 (1943). Oil Resources clearly received "a reasonably equivalent value" for its assets. Parts (b)(1) and (b)(2) of the section could not apply, as they address situations in which the transferring corporation continues in business and is likely to acquire debts well in excess of its remaining assets. Here, Oil Resources validly transferred its debt to another corporation and promptly dissolved. We conclude that the transfer was not fraudulent within the meaning of section 3439.04, and reverse the district court's finding that the transfer of assets could give rise to transferee liability on this ground.
 
 II. Shareholder Liability
 
 14
 The district court found six shareholders of Oil Resources personally liable for Oil Resources' taxes under the "trust fund" theory that shareholders take assets of a dissolved corporation subject to the rights of creditors of the corporation. Trubowitch v. Riverbank Canning Co., 30 Cal.2d 335, 345, 182 P.2d 182 (1947). The court erred, however, in failing to consider applicable statutes.
 
 
 15
 Cal.Corp.Code Sec. 2009 (West 1977) explicitly provides creditors with a cause of action against shareholders who have received assets improperly distributed upon dissolution of a corporation. The government argues, however, that an equitable cause of action under Trubowitch survives the adoption of the statute. This position is without merit. Common law rules must yield when they conflict with a statute's logic and intention. United States v. Locke, 471 U.S. 84, 98, 105 S.Ct. 1785, 1794, 85 L.Ed.2d 64 (1985); In re Fulghum Construction Corp., 706 F.2d 171, 173 (6th Cir.), cert. denied, 464 U.S. 935, 104 S.Ct. 342, 78 L.Ed.2d 310 (1983). Insofar as the theories may conflict, permitting relief under the Trubowitch "trust fund" theory would undermine legislative intent. We must therefore apply the statutory scheme in resolving this dispute.[2]
 
 
 16
 Cal.Corp.Code Sec. 2009(a) and (b) permit creditors to bring suit in the name of the corporation against shareholders to recover assets distributed upon dissolution "without prior payment or adequate provision for payment of any of the debts and liabilities of the corporation." See Zinn v. Bright, 9 Cal.App.3d 188, 87 Cal.Rptr. 736 (1970) (interpreting previous statute with similar substantive rule of law). Such assets may be reached only if no such provision for payment has been made. Id., 87 Cal.Rptr. at 740.
 
 
 17
 The shareholders contend that a genuine issue of material fact exists concerning whether adequate provision was made. Cal.Corp.Code Sec. 2005 sets out means by which a corporation may make adequate provision. The payment of a debt or liability is adequately provided for if "[p]ayment thereof has been assumed or guaranteed in good faith by one or more financially responsible corporations." Cal.Corp. Code Sec. 2005(a) (West 1977). The court found, and indeed the government contended below, that Capital expressly assumed Oil Resources' liabilities. If Capital was financially responsible[3] and assumed the obligation in good faith, the shareholders are shielded from liability. Because the record is insufficient to decide these issues, we remand to the district court.
 
 
 18
 The government, however, argues that contrary to the literal meaning of section 2005(a), a corporation's assumption of debt is not "adequate provision." The cases the government cites do not support this conclusion. In Coca-Cola Bottling Co. v. Commissioner, 334 F.2d 875 (9th Cir.1964), the court, in construing a similar Arizona statute, found that a promise by the president and sole shareholder of the seller corporation to indemnify a purchaser corporation for its payment of the seller corporation's debts did not constitute assumption of debt. Id. at 879. The court did not question that if a corporation had assumed the seller's debts, adequate provision was made. Id. Other cases cited by the government[4] do not rely upon a statute explicitly providing that a corporation's assumption of debt adequately provides for the payment of debt.
 
 
 19
 Finally, our application of section 2009 is not altered by consideration of Cal.Corp. Code Sec. 1107 (West 1977),[5] which concerns the rights of creditors of disappearing corporations that have participated in a merger. The district court found that the transaction was a de facto merger, and we do not find this holding to be erroneous.[6] Section 1107, although providing for the termination of corporations disappearing in a merger, protects creditors by imposing liability on surviving corporations. See Moe v. Transamerica Title Insurance Co., 21 Cal.App.3d 289, 98 Cal.Rptr. 547, 556-57 (1971) (finding, under predecessor to section 1107, successor corporation liable for punitive damages imposed on constituent corporation and stating that "[t]he corporate entities of the constituent corporations are preserved, following consolidation, to the end that they may be served with process and called upon to defend any contract or tort action which may be brought against them"). Further, section 1107(b) explicitly directs that "[a]ll rights of creditors and all liens upon the property of each of the constituent corporations shall be preserved unimpaired...." California has chosen clearly to insure that rights of creditors are not impaired by mergers.[7] We therefore find that in the context of a de facto merger, a creditor may reach the assets of shareholder-distributees if inadequate provision for payment of the debt has been made.[8]
 
 CONCLUSION
 
 20
 We reverse the district court's holding that the conveyance was fraudulent, but do not disturb its holding that Capital is otherwise liable for the tax debts. We also reverse the court's awards against the former Oil Resources shareholders and the liens it placed on their property, and remand for consideration of whether adequate provision was made for payment of the debts.
 
 
 
 [1]
 The district court's holding relied on a previous version of Cal.Civ. Code Sec. 3439.04 (West 1970): "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Because we conclude that the district court erred in finding the transaction to have been without adequate consideration, our conclusion would be the same under either statute
 
 
 [2]
 The government also asserts that because the shareholders did not argue below that the statute applied, we are barred from considering it on appeal. We have never held that where an issue has not been raised and considered by a district court, our court is prohibited from employing the appropriate law to determine the merits of the issue
 
 
 [3]
 At first blush, it appears probable that Capital was financially responsible. The district court found that Capital's stock was worth at least $3 a share at the time of the transaction. In addition, Capital received net assets from Oil Resources valued at over $9 million. Nonetheless, we do not know whether the value of the stock actually reflected the value of Capital's assets. If Capital was insolvent, even the infusion of assets from Oil Resources might not enable it to pay its debts
 The district court must also consider the significance of the government's lien. Typically, liens follow a transferor's assets, which in this case were more than adequate to satisfy the debt, into the hands of a transferee. United States v. Bank of Celina, 721 F.2d 163, 166 (6th Cir.1983); see also United States v. Bess, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.' " (quoting Burton v. Smith, 13 Pet. 464, 483, 10 L.Ed. 248)). The record does not reflect, however, whether the transfer of assets to Capital extinguished the lien under one of the exceptions in 26 U.S.C. Sec. 6323. Further, because tax liens are subordinate to other interests, see 26 U.S.C. Sec. 6323, in practice, lienholders do not always receive full protection simply by virtue of possessing liens. Accordingly, we must remand to the district court the issue of whether adequate provision has been made by Capital's assumption of the debt.
 
 
 [4]
 Alexander v. Commissioner, 61 T.C. 278 (1973); Estate of Glass v. Commissioner, 55 T.C. 543 (1970), aff'd. 453 F.2d 1375 (5th Cir.1972) (per curiam); Hine v. Commissioner, 54 T.C. 1552 (1970)
 
 
 [5]
 Although section 1107 applies explicitly to statutory mergers, we find the policy embodied in the provision to be relevant
 
 
 [6]
 "Courts have described five factors which indicate whether a transaction cast in the form of an asset sale actually achieves the same practical result as a merger: (1) was the consideration paid for the assets solely stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller?" Marks v. Minnesota Mining and Manufacturing Co., 187 Cal.App.3d 1429, 232 Cal.Rptr. 594, 598 (1986); see also Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451, 1457-58 (11th Cir.1985). The district court found each of these factors to be present
 
 
 [7]
 Nor do we think our decision unduly burdens shareholders of debtor corporations. California protects such shareholders by providing them with the right to vote on whether the corporation should participate in a de facto merger, Cal.Corp.Code Sec. 1201 (West Supp.1987), and the right of appraisal if they dissent from a vote in which the majority elects to engage in a de facto merger. Cal.Corp.Code Sec. 1300 (West Supp.1987)
 
 
 [8]
 Because we reverse the district court's order against the shareholders, we do not reach the other issues raised. We do note, however, that the parties agree that James Murphy was not a shareholder of Oil Resources and that an award against him in this capacity is inappropriate