UNITED STATES of America, Plaintiff–Appellee,

v.

DONAHUE INDUSTRIES, INC., dba Donahue Printing Company, Defendant,

and

Rainier National Bank, Defendant–Appellant.

No. 88–4354.

United States Court of Appeals, Ninth Circuit.

Argued, Submission Deferred Dec. 5, 1989.

Resubmitted Dec. 13, 1989.

Decided June 18, 1990.

Craig Miller, Davis, Wright & Jones, Seattle, Wash., for defendant-appellant.

Joan I. Oppenheimer, Atty., Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WALLACE, PREGERSON and NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

The United States government brought this action in district court to enforce an administrative tax levy against Rainier National Bank for the unpaid taxes of Donahue Industries, Inc. The district court found for the government and ordered the bank to pay a total of $83,215.23, including penalty and interest. On appeal, the bank contends (1) that the government's levy enforcement action was time-barred, (2) that even if the action was not time-barred,

the bank was not required to honor the levy, and (3) that even if the bank was required to honor the levy, it was not liable for a penalty because it had reasonable cause for refusing to honor the levy. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## BACKGROUND

In January 1980, Rainier National Bank ("the bank") loaned money to Donahue Industries, Inc., also known as Donahue Printing Company, Inc. ("the taxpayer"). As collateral for the loan, the bank took a security interest in the taxpayer's accounts receivable. Meanwhile, the Internal Revenue Service ("IRS") assessed deficiencies against the taxpayer for unpaid employment taxes incurred in 1978 and 1979, and filed notices of federal tax liens. On July 14, 1980, the IRS filed a notice of federal tax lien relating to assessments made in February, March and May 1980 in the amount of $20,569.91. The IRS filed a second lien notice on September 17, 1980, relating to an assessment made in August 1980 in the amount of $13,792.21. A third notice of federal tax lien was filed on November 19, 1980, relating to an assessment made in October 1980 in the amount of $9,935.87.[1]

The taxpayer defaulted on the bank loan in January 1981. The taxpayer's accounts receivable debtors thereafter made checks payable jointly to the taxpayer and the bank. The bank then deposited the checks in a special account not accessible to the taxpayer. As soon as payments were received, the bank applied the payments against the balance of the defaulted loan. The last payment was received in May 1981.

In March 1982, the IRS served a summons on the bank for an accounting of the taxpayer's accounts receivable collected by the bank. The summons identified the taxpayer as "Donahue Industries, Inc. (a/k/a Donahue Printing Company, Inc.)." In

---

1. The record is not clear as to the exact dates of assessment. We use here the dates and figures given in the taxpayer's brief on appeal, which are supported by the record and which are not disputed by the government.

April 1982, the bank provided the accounting. Its cover letter referred to the taxpayer as "Donahue Industries, Inc. (a/k/a Donahue Printing Company, Inc.)."

The IRS demanded by letter in November 1982 that the bank remit "monies collected from accounts receivable[ ] of Donahue Industries, Inc. on which the Internal Revenue Service claims a lien priority." The bank replied that it needed time to assemble documents and consult legal counsel. In September 1983, the IRS served a Notice of Levy (Form 668–A) on the bank in the amount of $78,568 for the deficiencies assessed against the taxpayer in 1980. The notice of levy referred to the taxpayer as "Donahue Printing Company, Inc." The bank responded in a letter that it was "unable to find an open or closed account relationship under the name of Donahue Printing." In October 1983, the IRS served a Final Demand Notice (Form 668–C) on the bank for the amount levied upon. Again, the demand notice identified the taxpayer as "Donahue Printing Company, Inc." The bank did not respond.

The government brought an action in district court in March 1987 to enforce the levy pursuant to section 6332(c) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 6332(c).[2] A year later, the bank moved for summary judgment on the

ground that it was not required to honor the IRS levy because it had no property belonging to the taxpayer when the levy was made. The district court denied the motion. The parties then agreed to a stipulated statement of facts and filed trial briefs.[3] The bank argued (1) that the levy enforcement action was barred by the statute of limitations set forth in 26 U.S.C. § 6502(a)(1);[4] (2) that it was not required to surrender property pursuant to 26 U.S.C. § 6332(c)(1) because it possessed no property belonging to the taxpayer when the levy was made; and (3) that it had reasonable cause for refusing to surrender the property levied upon, and thus was not liable for the penalty under 26 U.S.C. § 6332(c)(2).

The district court rejected each of the bank's arguments. The court held that (1) the government's action was not time-barred because the time limit in section 6502(a)(1) does not apply to actions brought under section 6332(c); (2) the bank was required under section 6332(c)(1) to surrender the property levied upon because it possessed the property subject to federal tax liens; and (3) the bank was liable for the 50% penalty under section 6332(c)(2) because it had no reasonable cause for failing to surrender the property.

**2.** Subsection (c) was redesignated subsection (d) by amendment to section 6332 in 1988, Pub.L. No. 100–647, § 6236(e)(2), 102 Stat. 3342, 3740 (1988) (effective July 1, 1989). Section 6332 provides in relevant part:

(d) Enforcement of levy.—
(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered....
(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). 26 U.S.C. § 6332(d). For consistency's sake, this opinion refers to subsection 6332(c), as this subsection was designated when the levy enforcement action was brought and the dis-

trict court considered and decided the action. The language cited here and at issue in this case was unchanged by the redesignation of (c) to (d), and the reasoning of the opinion applies equally to the current 26 U.S.C. § 6332(d).

**3.** The government labelled its trial brief "Motion for Summary Judgment," but the district court deemed the matter "ripe for final resolution" and issued a memorandum decision. Memorandum Decision of October 21, 1988, at 1, 4. Neither party now contends that this appeal is from an order granting summary judgment.

**4.** Section 6502 provides in relevant part:
(a) Length of period.—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
(1) within 6 years after the assessment of the tax....
26 U.S.C. § 6502(a)(1).

## STANDARD OF REVIEW

Because the issues on appeal are purely legal, we review the district court order de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

### I. Statute of Limitations

The bank contends that the government was barred from bringing this action by the six year statute of limitations set forth in 26 U.S.C. § 6502(a)(1). The government responds that neither the six year statute of limitations in section 6502(a)(1) nor any other limitations period applies to levy enforcement actions brought under 26 U.S.C. § 6332. We need not decide whether a statute of limitations longer than the six year statute of limitations set forth in section 6502(a)(1) applies to actions brought under section 6332, because the levy in this case was made less than six years after the assessment of the tax.

The IRS assessed deficiencies against the taxpayer between February and October 1980. Approximately three years later, in September 1983, the IRS served a notice of levy on the bank. The applicable Treasury Regulation provides that a "[l]evy may be made by serving a notice of levy." 26 C.F.R. § 301.6331–1(a)(1) (1989). Therefore, the levy in this case was made in September 1983—well within the six year time limit of section 6502(a)(1).

▮▮▮▮ The bank argues, however, that to "levy" for purposes of the statute of limitations, the government had to seize the bank's property, rather than properly serve a notice of levy, as it did in this case. The bank rests this argument on 26 U.S.C. § 6502(b), which provides that "[t]he date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section

6335(a) is given." Section 6335(a), in turn, states in relevant part:

(a) Notice of seizure.—As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property (or, in the case of personal property, the possessor thereof).... Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized and, in the case of real property, a description with reasonable certainty of the property seized.

26 U.S.C. § 6335(a). Since the government never physically seized the property, the bank argues, the government did not satisfy the statute of limitations.

The bank misinterprets the statute and regulations by failing to distinguish between levies on tangible property and levies on intangible property. There is no question that the government has authority to levy upon both tangible and intangible property. The statute defines levy as "the power of distraint and seizure *by any means,*" 26 U.S.C. § 6331(b) (emphasis added), and explicitly provides that levy may be made upon "property or rights to property (whether real or personal, *tangible or intangible* )." *Id.* (emphasis added); *see also* 26 C.F.R. § 301.6331–1(a)(1) ("The district director may levy upon any property, or rights to property, whether real or personal, tangible or intangible....").

The government cannot physically seize intangible property. The regulations, therefore, clearly provide for levy by proper service of notice.

*Levy may be made by serving a notice of levy* on any person in possession of, or obligated with respect to, property or rights to property subject to levy, *including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation.*

26 C.F.R. § 301.6331–1(a)(1) (emphasis added).[5] Each type of property listed in this

---

5. This language apparently is derived from 26 U.S.C. § 6331(a), which states:

*Levy may be made upon the accrued salary or wages* of any officer, employee, or elected

official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, *by serving a notice of levy* on the employ-

regulation is intangible. If, as the bank argues, the government cannot effect levy by notice of levy, then the government cannot satisfy the statute of limitations in administrative levy actions involving intangible property without actually filing an action in district court. The bank's position conflicts with section 6502(a)(1), which provides that unpaid taxes may be collected by levy *or* by a proceeding in court within six years after assessment of the tax. 26 U.S.C. § 6502(a)(1).

The Supreme Court has recognized the distinction between intangible and tangible property for purposes of determining when a levy is made in a particular case, and specifically cited section 301.6331–1(a)(1) as authority for determining when a levy is made upon intangible property. The Court stated:

> Levy upon tangible property normally is effected by service of forms of levy or notice of levy and physical seizure of the property. Where that is not feasible, the property is posted or tagged. Because intangible property is not susceptible of physical seizure, posting, or tagging, levy upon it is effected by serving the appropriate form upon the party holding the property or rights to property. *See* Treas.Reg. § 301.6331–1(a)(1), 26 C.F.R. § 301.6331–1(a)(1) (1976).

*G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977).[6]

There is no conflict between the statutory language relied on by the bank and the regulations. Sections 6502(b) and 6335(a) of the statute determine when a levy is made on tangible property, and section 301.6331–1(a)(1) of the regulations determines when a levy is made on intangible property. In the case of tangible property, levy is made by physical seizure and notice thereof. In the case of intangible property, a levy is made for all purposes—including satisfaction of the statute of limitations set forth in 26 U.S.C. § 6502(a)(1)—by serving a notice of levy pursuant to 26 C.F.R. § 301.6331–1(a)(1).

Because accounts receivable are intangible property, the levy in this case was made when the IRS served a notice of levy on the bank in September 1983. The levy was made less than six years after the tax assessments, and was timely.

## II. Refusal to Honor Levy

The bank argues that it was not required to honor the IRS levy because the bank possessed no property belonging to the taxpayer when the levy was made in September 1983. The bank bases this argument on 26 U.S.C. § 6331(b), which states: "a levy shall extend only to property possessed and obligations existing at the time [the levy is made]." According to the bank, this language means that a levy extends only to property possessed *by the taxpayer* at the time the levy is made. The government concedes that the taxpayer's property rights in the accounts receivable had been extinguished prior to the 1983 levy, but argues that, because the bank originally took the accounts receivable subject to federal tax liens, the bank was required to surrender the property levied upon.

We cannot accept the bank's interpretation of the statute and regulations. Under 26 U.S.C. § 6332(a), "any person in possession of ... property or rights to property subject to levy upon which a levy has been made shall, upon demand ..., surrender such property or rights." Levy may be made "upon all property and rights to property ... belonging to [a taxpayer] *or on which there is a [federal tax] lien.*" 26 U.S.C. § 6331(a) (emphasis added). A federal tax lien attaches to a taxpayer's property when unpaid taxes are assessed, and continues to attach until either the tax is paid or the lien becomes unenforceable because of lapse of time. 26 U.S.C.

---

er (as defined in section 3401(d)) of such officer, employee, or elected official. 26 U.S.C. § 6331(a) (emphasis added).

**6.** *See also Phelps v. United States,* 421 U.S. 330, 337, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975)

("Historically, service of notice has been sufficient to seize a debt, and notice of levy and demand are equivilent to seizure.") (citations omitted).

§§ 6321, 6322. The lien continues to attach to a taxpayer's property regardless of any subsequent transfer of the property. *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958); *United States v. Oil Resources, Inc.,* 817 F.2d 1429, 1433 n. 3 (9th Cir.1987); *Omnibus Fin. Corp. v. United States,* 566 F.2d 1097, 1103 (9th Cir.1977). Thus, under the Treasury Regulations,

> [p]roperty subject to a Federal tax lien which has been sold or otherwise transferred by the taxpayer may be seized *while in the hands of the transferee* or any subsequent transferee.... Levy may be made by serving a notice of levy on *any person in possession* of ... property or rights to property subject to levy.... [A] levy only reaches property in the possession of *the person levied upon* at the time a levy is made.

26 C.F.R. § 301.6331–1(a)(1) (emphasis added).

▮ The Treasury Regulation applicable to 26 U.S.C. § 6331 makes abundantly clear that property subject to a federal tax lien need not be in the hands of the taxpayer at the time a levy is made. Section 6331(b) of the statute makes no reference to the identity of the owner or possessor of the property at the time levy is made. The bank articulates no reason for and cites no authority that supports its argument that the property possessed when the levy is made must be possessed exclusively by the taxpayer.[7]

---

7. Cases the bank cites in support of its argument that a levy is enforceable against a third party only if the taxpayer possesses the property at the time the levy is made are not on point. Most are distinguishable because in them the government prevailed on the ground that the government had levied upon property belonging to the taxpayer; the issue now before us was not raised. *See Peoples Nat'l Bank of Washington v. United States,* 777 F.2d 459, 460–61 (9th Cir. 1985); *United States v. First Nat'l Bank of Arizona,* 348 F.Supp. 388, 389 (D.Ariz.1970), *aff'd,* 458 F.2d 513 (9th Cir.1972); *Bank of Nevada v. United States,* 251 F.2d 820, 827 (9th Cir.1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958); *State Bank of Fraser v. United States,* 861 F.2d 954, 960–61 (6th Cir.1988); *United States v. Central Bank of Denver,* 843 F.2d 1300, 1305 (10th Cir.1988); *United States v.*

In 1981, the bank took the taxpayer's accounts receivable subject to the government's lien, which attached when the tax deficiencies were assessed in 1980. We hold that the bank was required to honor the levy by surrendering the property demanded.

### III. Penalty for Refusal to Honor Levy

A court must impose a 50% penalty on any person who fails or refuses to honor a tax levy without "reasonable cause." 26 U.S.C. § 6332(c)(2). According to the Treasury Regulation applicable to 26 U.S.C. § 6332(c)(2), a penalty should not be imposed "in cases where [a] bona fide dispute exists concerning the amount of the property to be surrendered pursuant to a levy or concerning the legal effectiveness of the levy." 26 C.F.R. § 301.6332–1(b)(2). A Senate Report accompanying the Tax Lien Act of 1966 states: "it is intended that a bona fide dispute over the amount owing to the taxpayer (by the property holder) or over the legal effectiveness of the levy itself is to constitute reasonable cause under [§ 6332(c)(2)]." S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Admin.News 3722, 3740.

The district court concluded that the bank had no reasonable cause to refuse to honor the levy, and imposed a 50% penalty. The bank contends that the district court erred because the bank had reasonable cause for refusing to honor the government's levy.

---

*Citizens and Southern Nat'l Bank,* 538 F.2d 1101, 1107 (5th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579 & 1580, 51 L.Ed.2d 792 (1977); *United States v. Sterling Nat'l Bank & Trust Co. of New York,* 494 F.2d 919, 922 (2d Cir.1974); *United States v. Third Nat'l Bank of Nashville, Tennessee,* 589 F.Supp. 155, 157 (M.D.Tenn. 1984); *United States v. First Nat'l Bank of Commerce in New Orleans,* 73–2 U.S.T.C. ¶ 9751 (1973). Other cases are distinguishable because, although the banks in them prevailed, they did not prevail on the theory advanced by the bank in this case. *See Pittsburgh Nat'l Bank v. United States,* 657 F.2d 36, 38–40 (3d Cir. 1981); *United States v. First Nat'l Bank and Trust Co.,* 695 F.Supp. 194, 88–1 U.S.T.C. ¶ 9340 (1988); *United States v. Philadelphia Nat'l Bank,* 81–2 U.S.T.C. ¶ 9493 (1981).

■ The bank first argues that there was a "bona fide dispute concerning the legal effectiveness of the levy," because the bank no longer possessed property belonging to the taxpayer when the levy was made. To support its position, the bank cites *United States v. Sterling National Bank & Trust Co. of New York*, 494 F.2d 919 (2d Cir.1974). *Sterling*, however, is inapposite. That case involved the issue "whether a *bona fide* legal dispute over the amount that the bank owed the taxpayer [was] sufficient excuse for the bank's failure to honor the levy." *Sterling*, 494 F.2d at 923 (emphasis added). The legal dispute in *Sterling* involved "an unsettled question of law." *Id.* In contrast, in the present case the district court correctly noted that the bank "has not asked the court to resolve any unsettled questions of law." Memorandum Decision of October 21, 1988, at 9. The law is settled that a levy may effectively reach property on which a federal tax lien has attached, regardless of any subsequent transfer of the property. *See* 26 U.S.C. § 6331(a); 26 C.F.R. § 301.6331–1; *Bess*, 357 U.S. at 57, 78 S.Ct. at 1058; *Oil Resources, Inc.*, 817 F.2d at 1433 n. 3; *Omnibus Fin. Corp.*, 566 F.2d at 1103; *United States v. Bank of Celina*, 721 F.2d 163, 169 (6th Cir.1983); *Myers v. United States*, 647 F.2d 591, 601 (5th Cir. 1981). The dispute concerning the legal effectiveness of the levy in this case, unlike the dispute in *Sterling*, was not bona fide, and therefore does not excuse the bank's failure to honor the levy.

■ The bank also argues that it had reasonable cause for failing to honor the levy because of deficiencies in the notice of levy and the final demand notice. Neither the Treasury Regulation, 26 C.F.R. § 301.6332–1(b)(2), nor the Senate Report, S.Rep. No. 1708, 89th Cong., 2d Sess., refers to deficiencies in the levy and demand notices as reasonable cause for failure to honor a levy. However, serious deficiencies in the levy notices may call into question the legal effectiveness of the levy, and give reasonable cause for failing to honor the levy.

■ Here, the district court held that the incorrect identification of the taxpayer in the notice of levy and final demand notice did not provide reasonable cause for the bank's failure to honor the levy. The district court reasoned:

The levy notices did refer to the taxpayer as "Donahue Printing" rather than "Donahue Industries, Inc."; however, [the bank] had previously responded to the IRS summons with a letter regarding "Donahue Industries, Inc. (Donahue Printing Co.)." Moreover, the IRS and [the bank] had corresponded about the accounts receivable of Donahue over the course of more than a year before the IRS served these notices. In this situation, [the bank] had adequate notice regarding the identity of the taxpayer at issue.

Even if the IRS notices may have caused some confusion at the time they were served, the infirmities in the notices do not provide "reasonable cause" within the meaning of section 6332(c)(2) [because] ... [p]resumably, [the bank] learned that the levy covered the accounts receivable of Donahue Industries, Inc. soon after being served with the complaint in this action[, which named both Rainier National Bank and Donahue Industries, Inc. dba Donahue Printing Company as defendants].

Memorandum Decision of October 21, 1988, at 8–9.

We agree with the district court. The deficiencies in the levy notices, under the circumstances, do not excuse the bank's refusal to honor the levy.

■ Finally, the bank contends that it had reasonable cause to refuse to honor the levy because the notice of levy failed to require surrender of property other than that belonging to the taxpayer. The notice (Form 668–A) served on the bank provides in relevant part:

Chapter 64 of the Internal Revenue Code *provides a lien for the above tax [not paid by the taxpayer]* .... The amount is still due, owing, and unpaid. All property, rights to property, money, credits, and bank accounts now in your

possession and belonging to this taxpayer (*or for which you are obligated*) ..., are levied upon for payment of the tax.... Demand is made on you for the amount necessary to pay this tax liability....

Form 668–A (Rev. 12–82) (emphasis added); *see also* Form 668–A (Rev. 12–82), *reprinted in* M. Saltzman, *IRS Practice and Procedure* ¶ 14.14[4], Form 14–8 (Cumulative Supp. No. 2, 1989).

The notice form served on the bank requires surrender of the accounts receivable. It refers to property for which the bank was obligated, and specifically refers to the lien. The bank was obligated for the accounts receivable, which the bank took subject to the federal tax lien. Further, the bank had already been put on notice of the requirement to surrender property in its possession on which a lien had attached when the government served its notice of levy form in 1983; in November 1982, the bank received a letter from the IRS demanding "monies collected from accounts receivable[ ] of Donahue Industries, Inc. *on which the Internal Revenue Service claims a lien priority.*" (Emphasis added.)

Neither the wording of the levy notices nor the dispute over possession of the property levied upon is reasonable cause for the bank's failure to honor the levy. The district court correctly imposed the 50% penalty.

### CONCLUSION

For these reasons, the judgment of the district court is AFFIRMED.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I concur in parts I and II of the majority opinion. However, because I do not think Rainier should be penalized for litigating this case, I dissent from part III of the majority opinion.

As the majority explains, *supra* at 1331, a penalty should not be imposed "in cases where [a] bona fide dispute exists concerning the ... legal effectiveness of the levy."

26 C.F.R. § 301.6332–1(b)(2) (1989). Elaborating on this standard, the majority adopts the Second Circuit's conclusion in *United States v. Sterling Bank & Trust Co.,* 494 F.2d 919 (2d Cir.1974), that a bona fide legal dispute exists when there is "an unsettled question of law." *Id.* at 923. I agree with the majority that whether this case presents an unsettled question of law is the proper focus for our inquiry. However, I cannot concur in the majority's application of that standard in this case.

The majority concludes that this case does not present an unsettled question of law because "[t]he law is settled that a levy may effectively reach property on which a federal tax lien has attached regardless of any subsequent transfer of the property." *Supra* at 1332. This conclusion, however, conflates an issue that is settled with one that is not: it is well-established that a *lien* continues to attach to a taxpayer's property regardless of any subsequent transfer of that property, *see, e.g., United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) (*Bess*); *United States v. Oil Resources, Inc.,* 817 F.2d 1429, 1433 n. 3 (9th Cir.1987) (*Oil Resources*); *Omnibus Financial Corp. v. United States,* 566 F.2d 1097, 1103 (9th Cir.1977) (*Omnibus Financial*), but it is not settled that a *levy* may be made on property on which there is a lien but which is no longer in the possession of the taxpayer. Only the latter issue is contested in this case; and, while I concur with the majority's resolution of the issue, *see supra,* part II, I submit that the reasoning employed to reach that resolution is more novel than the majority modestly implies by claiming the issue is well-settled.

As the majority relates, Rainier argues that the language of 26 U.S.C. § 6331(a), which clearly states that the government may "levy upon all property and rights to property ... belonging to [the taxpayer] *or on which there is a lien,*" (emphasis added) is limited by the language of 26 U.S.C. § 6331(b) which provides that "a levy shall extend only to property possessed and obligations existing at the time thereof." Section 6331(b) cuts back on section 6331(a), Rainier contends, by permitting a levy to

extend only to property and rights to property that belong to the *taxpayer* at the time of the levy. Plainly, on its face, section 6331(b) does not indicate whether a levy extends only to a *taxpayer's* property possessed at the time of the levy or whether a levy extends only to property possessed by *any person* at the time of the levy. Although I agree with the majority that the latter reading is the proper interpretation of the statutory gap, I do not think Rainier's interstitial argument is as implausible as the majority suggests.

Rainier's interpretation of section 6331(b) has some support in that section's legislative history. The Senate Report accompanying the Federal Tax Lien Act of 1966 states:

> the bill adds a sentence specifying that this right to levy extends only to property of the taxpayer *and* in the possession of the person on whom the levy is made, or obligations to the taxpayer of the person on whom the levy is made which are existing at the time of the levy.

S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 3722, 3738 (emphasis added). Because the legislative history uses the conjunctive "and" rather than a disjunctive "or" between the two prepositional phrases modifying/describing the property to which a levy may extend, it suggests, as Rainier contends, that a levy may only extend to property if two requirements are met: first, the property must be property of the taxpayer, and second, the property must be in the possession of the person on whom the levy is made. *See* 14 J. Mertens, *The Law of Federal Income Taxation,* § 49E.20 (1989) ("A levy extends only to property possessed at the time of the levy, which is property of the taxpayer *and* in possession of the person on whom the levy is made, and obligations existing at the time of the levy.") (emphasis added).

Rainier's contention also finds support in some opinions of our sister circuits. For example, in *United States v. Bank of Celina,* 721 F.2d 163 (6th Cir.1983) (*Bank of Celina*), the government brought an action to foreclose a tax lien pursuant to 26 U.S.C. § 7403 and to enforce a levy pursuant to 26 U.S.C. § 6331. *Id.* at 165. Since the government relied "solely upon its lien to support its claim of entitlement," the court did not reach the levy issue. *Id.* at 166–67. However, in distinguishing between a lien foreclosure suit and a levy enforcement action, the court stated that "[t]he levy extends only to the *taxpayer's* property that is possessed at the time of service. 26 U.S.C. § 6331(b)." *Id.* at 166 (emphasis added). The court went on to conclude that the government's lien entitled it to the money which the bank had tried to set off, holding that "once a federal tax lien has attached to a taxpayer's property, that property remains subject to the lien when transferred from the taxpayer to a third party." *Id.* at 169. That the court pronounced this holding, however, should not be surprising. As I stated above in describing the two issues which the majority mistakenly conflates, it is well-settled that a lien attaches to property regardless of any subsequent transfer. *See, e.g., Bess,* 357 U.S. at 57, 78 S.Ct. at 1058; *Oil Resources,* 817 F.2d at 1433 n. 3; *Omnibus Financial,* 566 F.2d at 1103. But, in this case, there is no argument, indeed Rainier concedes, that the government could have prevailed in a lien foreclosure action. The issue here is the scope of a levy enforcement action and the language from *Bank of Celina*—a case mistakenly cited by the majority for the proposition that its resolution of the levy issue is well-established—suggests that Rainier is correct: a levy only extends to the taxpayer's property.

*United States v. Cache Valley Bank,* 866 F.2d 1242 (10th Cir.1989), is another lien enforcement action with language supporting Rainier's interpretation of section 6331(b). In *Cache Valley Bank,* the Tenth Circuit, also distinguishing a lien foreclosure action from a levy action, interpreted section 6331(b) to mean that "[t]he *levy* itself is effective only against those funds present in the taxpayer's account at the time the levy was received." *Id.* at 1245 (emphasis in original), *citing Bank of Celina,* 721 F.2d at 166; 26 U.S.C. § 6331(b).

The Third Circuit's decision in *Pittsburgh National Bank v. United States,* 657 F.2d 36 (3d Cir.1981), also lends support to Rainier's interpretation of 6331(b).

There, the Bank brought a wrongful levy action against the government, contending that the government's levy was improper because the taxpayer did not have a property interest in his account at the time of the levy. *Id.* at 37–38. The Third Circuit agreed, concluding that "[i]f the taxpayer did not have a property interest in the checking account under Pennsylvania law, the district court's determination that the Government's levy was wrongful must be affirmed." *Id.* at 38. Finding that the taxpayer did not have a property interest in his bank account, the court invalidated the levy. *Id.* at 40. Thus, like *Bank of Celina* and *Cache Valley Bank, Pittsburgh National Bank* makes it clear that Rainier's proffered interpretation of 6331(b) does not struggle against an overwhelming tide of well-settled authority as the majority suggests.

My contention that the legislative history and the language in these three decisions from our sister circuits render unsettled the proper interpretation of section 6331(b)'s facially ambiguous language is further bolstered by the fact that the majority points to no case that has adopted our interpretation of section 6331(b) as its holding. The majority does cite five cases to support its conclusion that our decision is only following well-settled authority, *supra* at 1332, but none of the five are on point. Neither *Bess, Oil Resources,* nor *Omnibus Financial* even consider the language of section 6331. As previously discussed, those three cases stand only for the proposition that a *lien* attaches to a taxpayer's property regardless of any subsequent transfer—a proposition that is not disputed in this case. Another of the five is *Bank of Celina,* but, as I explained above, that case involved a lien foreclosure action not a levy action, and when the court did discuss section 6331(b), its interpretation supported Rainier.

The fifth case cited by the majority, *Myers v. United States,* 647 F.2d 591 (5th Cir.1981), does have language supporting our interpretation of section 6331(b). *Id.* at 601 (A "levy and seizure need not be accomplished while the property is in the hands of the taxpayer; so long as the property is subject to a valid federal tax lien, it may be seized in the hands of any subsequent purchaser."). However, the only issue presented in *Myers* was whether the prescribed levy procedures violated an individual's right to procedural due process because "they permit the seizure of private property without a preseizure hearing or a prompt and adequate postseizure hearing." *Id.* at 602. Thus, the court was not required to resolve the issue with which we are faced in this case. In sum, the majority has directed us to no case which directly refutes the interpretation of section 6331(b) Rainier has offered—an interpretation which itself is not unsupported by language from the decisions of our sister circuits. Under these circumstances, it is simply incorrect to suggest that the issue before us is well-settled.

While I completely support our interpretation of section 6331(b), I cannot overlook the fact that it is novel, that the legislative history suggests a contrary interpretation, and that our interpretation goes against language in the decisions of our sister circuits. In essence, this is a case of first impression in which we were required to interpret a poorly-drafted facially ambiguous statute. I, therefore, respectfully dissent from the majority's conclusion that our interpretation of section 6331(b) is well-settled and the majority's consequent decision to penalize Rainier for litigating this case.