EDITH BROWN CLEMENT, Circuit Judge,
dissenting:
I disagree with the majority’s conclusions on the conversion and failure to hon- or a tax levy claims against Boardwalk and *387 Plains Capital. The opinion sows seeds of confusion and reaches inconsistent results by exalting form over substance with respect to the service of the tax levy when discussing the conversion claims while simultaneously taking liberties with the formalities of serving a levy in reaching a conclusion on the failure to honor a tax levy claim.
I.
Before discussing the specific claims, I note that all three parties in this case bear some blame for sloppiness and poor communication. The IRS likely could have been avoided this litigation had the agent simply served the levy on Boardwalk one day later when the Ferrari was delivered to the dealership. Had the levy been served in a textbook, technically correct manner, there would be no legal question as to whether the IRS had asserted its right to the Ferrari and any sale proceeds thereof, leading to a straightforward conclusion that Boardwalk and Plains Capital improperly handled the sale proceeds in light of the undisputedly valid tax liens and levy.
In retrospect, perhaps the IRS is learning the meaning of the adage that “no good deed goes unpunished.” Instead of simply seizing the Ferrari from Gregory Rand and disposing of it at a government auction, the IRS sought to maximize its recovery to benefit both Rand and the United States by arranging a private sale of the car. Now everyone loses — Rand’s tax liability is virtually unchanged, the IRS collected an essentially negligible amount of back taxes, and the government has been forced to spend money to litigate, all due to the poor execution of what appears to have been a well-intentioned attempt to maximize recovery of an undisputed tax debt.
While the IRS can be faulted for its poor execution, Boardwalk and Plains Capital are far from the blameless participants they attempt to portray in their respective arguments. Boardwalk was an active participant in the preparation and execution of the plan to maximize the value of Rand’s Ferrari. Furthermore, Boardwalk knew of and agreed to participate in the plan negotiated between Rand and the IRS to sell the car and was told multiple times that the sale proceeds were to be directed toward Rand’s existing tax liens. Yet despite this knowledge and participation, Boardwalk escapes all liability under the majority’s opinion by hiding behind the IRS agent’s mistake of serving the levy one day too early. Moreover, not only does Boardwalk escape liability for its actions, it benefits from them by keeping the $10,500 commission it received for selling the car.
Plains Capital similarly attempts to portray itself as an unwitting participant in the transaction. The bank paints its conduct as a financial institution that was simply accepting funds on behalf of a debt- or to pay off a loan, oblivious to the totality of the situation. By doing so, Plains Capital tries to sidestep the inconvenient details that it made the loan in question with full knowledge of Rand’s tax liens that exceeded $3 million and that, therefore, the bank’s priority on its lien on the Ferrari was secondary to the existing tax liens. It nonetheless accepted the funds to pay off the loan even after a discussion with the IRS about the relative priority of the tax liens and the loan secured by the Ferrari.
II.
Moving to the reasoning of the opinion, my concern lies in the potential inconsistencies in what appear to be contradictory conclusions on the conversion and failure *388 to honor a tax levy claims. The crux of the problem is the legal requirement that “a levy shall extend only to property possessed and obligations existing at the time thereof.” 26 U.S.C. § 6331(b). That is, the levy is only effective to the extent that the property or existing obligation being levied is in the possession of the individual or entity upon whom the levy is served at the moment of service. See Treas. Reg. § 301.6331-l(a) (“Except as provided in § 301.6331 — 1(b)(1) with regard to a levy on salary or wages, a levy extends only to property possessed and obligations which exist at the time of the levy.”). An “obligation” in the context of the statute “exist[s] when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date.” Id.
Beginning with the conversion claim, the opinion presents one possible and technically valid, if unsatisfying, result in reversing the district court’s finding of liability. Under the majority’s reasoning, because the IRS served the levy on Boardwalk one day before Rand delivered the Ferrari to the dealership, the levy was ineffective because the dealership did not possess the car at the time of the levy. Without an effective levy, the IRS could not claim the right of immediate possession to the car or the sale proceeds that is necessary to support a conversion claim under Texas law. Therefore, because the ineffective levy negated a required element for the conversion claims, Boardwalk and Plains Capital are absolved from any liability for conversion. While the opinion also discusses whether the IRS’s statutory tax liens might provide the ownership interest necessary to maintain a conversion action, the conclusion of the opinion’s discussion makes clear the basis for the decision on conversion liability — the levy was ineffective because it was served too early and therefore the IRS could not claim an immediate right to possession, rendering the conversion claim meritless.
What concerns me is that the next section of the opinion addressing the failure to honor a tax levy claim against Plains Capital goes out of its way, through the use of tracing and asserting facts not in the record, to avoid the bright line “levy-when-in-possession” rule that was dispositive in reversing the conversion liability findings. To wit, after holding that the levy served on Boardwalk one day too early was entirely ineffective, the opinion holds that a levy served twelve days too late — after Plains Capital had used the Ferrari sale proceeds and was no longer in possession of the funds — was effective and provides the basis for holding Plains Capital liable on the failure to honor a levy claim.[1]
To rationalize this conclusion and avoid the bright line rule requiring possession at the time the levy is served, the opinion asserts, with no evidentiary basis, that the bank’s use of the funds to extinguish Rand’s loan twelve days before the levy was served was simply a “bookkeeping entr[y].” The opinion then makes an additional unsupported assertion that “[t]he *389 proceeds are still with Plains Capital,” and presumably, given the wording and logic of the statement, may still be with Plains Capital today.
As a practical matter, I agree with the sentiment of the opinion’s approach to some extent. It is likely that on the day the bank applied the sale proceeds of $194,982 to Rand’s loan, thereby “using” the funds, the internal bank transaction was a bookkeeping entry, transferring the received proceeds into some internal deposit account designed to offset the retirement of the liability represented by the loan account. However, the case does not involve a dispute over whether the levy was served at precisely the same moment, or within a few hours, or even within a few days, of when the bank received the sale proceeds and then “used” the funds to extinguish Rand’s loan. Instead, it was twelve days later — nearly two weeks — a period long enough that it prevents us from simply asserting without additional evidence that the bank still possessed the funds and thus concluding that the levy was effective.
The opinion’s “extravagant lunch” example of dissipating funds is of no assistance in justifying its conclusion. While such a lunch would certainly be one example of dissipation, the bank could have done numerous things with the money in the twelve days before the IRS served the levy on Plains Capital. The bank could have used the money to fund loans to multiple borrowers, to pay the utility bills for the bank’s facilities and to pay employees’ salaries, or perhaps used to buy fancy toasters that were given away to customers who opened new accounts. Each of these action would have effectively or practically dissipated the funds and resulted in Plains Capital no longer having possession of the Ferrari sale proceeds when the levy was eventually served — thereby negating the core requirement necessary for the levy to be effective. We cannot find Plains Capital liable for failure to honor a levy by assuming, without proof or record evidence offered by the IRS, that the bank received $194,982 and maintained possession by holding it in its own account for twelve days until the levy was served. This is particularly true given that the first section of the opinion holds that lack of possession at the time the levy was served is dispositive in concluding that the levy on Boardwalk was not effective.
Furthermore, while the opinion’s reliance on the ability to trace the funds has a practical appeal, the power to trace must be subject to limits. The opinion offers no such limits, and instead presents an unbounded ability for the IRS to serve a levy long after a bank receives funds, provided the levy is for a sum certain. While money may be considered fungible and it may be theoretically possible to “trace” any specific deposit amount that enters and eventually leaves a bank’s accounting system over a long period of time, that does not allow unchecked power to assert that some sum of money “[is] still with Plains Capital” days or weeks after a transaction has occurred.
Even if we circumvent the possession-at-time-of-levy rule by allowing the IRS to trace funds by serving a levy after the bank has “used” the money, the opinion’s reasoning has no limiting principle with respect to the time limit on its assumption that “[t]he [traceable] proceeds are still with Plains Capital.” Here, the majority implicitly gives its approval to a twelve-day window for the IRS to serve a levy after it receives word that a bank has received funds that might be subject to a tax levy. What the opinion fails to address is where the boundary is for such an action with no further evidence of tracing. Can the IRS serve a levy fifteen days after the funds *390 are received under its assumption that the proceeds used to pay off a loan are merely a bookkeeping entry? 30 days? Even longer? Its not clear what the limit would be if we depart from the rule that the levy must be served while the bank is truly in possession of the funds, i.e. in the time period between when the bank accepts the funds and when the funds are allegedly dissipated, either through a mere bookkeeping entry or by physically dissipating the money in some form.[2] And while I share the concern in expressed in the opinion’s footnote that such a rule would require that the “IRS ... be waiting to serve the levy the very moment the money was transferred,” such is the challenge of attempting to apply bright line rules to the messy realities of everyday business transactions. What the IRS loses as a result of its untimely levy on a Ferrari that is not at a dealership, it does not gain back by serving an untimely levy on the car’s sale proceeds at a bank.
III.
A.
In light of the above discussion, I would affirm the district court’s finding of joint and several liability against Boardwalk and Plains Capital for conversion. As stated in the opinion, the IRS needed to take some action to enforce the outstanding tax liens to perfect its right to immediate possession in order to maintain an action for conversion. “A federal tax lien ... is not self-executing, and the IRS must take [ajffirmative action ... to enforce collection of the unpaid taxes.” EC Term of Years Trust v. United States, 550 U.S. 429, 430-31, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007) (internal quotation marks omitted). Given the entirety of the facts and circumstances, the record shows that the IRS took multiple affirmative actions to enforce the undisputed tax liens and I would hold that the levy served on Boardwalk validly attached to the obligations under the agreement to sell the Ferrari.
As the record reflects, the IRS negotiated with Rand that, in lieu of seizing the car outright, the Ferrari would be sold in a private sale by Boardwalk. The district court also explicitly found that the IRS had a series of conversations and eventually reached an agreement with Greg Minor, Boardwalk’s general manager, that the dealership would sell the Ferrari on behalf of the IRS while authorizing Boardwalk to retain a sales commission from the sale proceeds. United States v. Boardwalk *391 Motor Sports, Ltd., No. 4:08-CV-110, 2010 WL 1717994, at *1-2 (E.D.Tex. Jan. 29, 2010).[3] The agreement between the IRS and Boardwalk also provided that the sale proceeds were to be used to satisfy Rand’s tax debt and the dealership was not to transfer any sale proceeds to Plains Capital “unless and until the IRS and the Bank agreed on the distribution of funds.” Id. at *2. As part of the required process to assert its right to enforce the tax liens, the IRS agent served a notice of levy on Boardwalk pursuant to 26 U.S.C. § 6331(a) and (b). The record even shows that the IRS agent persevered despite being misled by Rand about the location of the Ferrari. The agent’s case notes reflect that when the levy was served on Boardwalk, the agent went to the dealership with the belief that Rand had already delivered the Ferrari to Boardwalk. Only when he arrived to serve the levy did the agent learn that Rand had deceived him by telling him the car was already there.[4]
While I do not dispute the opinion’s conclusion that the levy served on Boardwalk one day before the Ferrari was delivered was ineffective with respect to possession of the car itself,[5] I would conclude that the levy on Boardwalk was effective to assert a right to possess the sale proceeds of the Ferrari under the additional language in the relevant section that a levy shall extend to “obligations existing at the time thereof.” 26 U.S.C. § 6331(b). As found by the district court, the IRS and Boardwalk reached an agreement for Boardwalk to sell the Ferrari on behalf of the IRS and Rand and to maintain control of the sale proceeds in exchange for payment of Boardwalk’s sales commission. Boardwalk Motor Sports, Ltd., 2010 WL 1717994, at *1. These obligations originated over the “series of conversations,” id., between the IRS and Boardwalk and were finalized — at a minimum, if not before — at the time the IRS agent served the levy, along with instructions that the sale proceeds were not to be transferred to Plains Capital and for Boardwalk to interplead the proceeds if the dealership had any issues. Id. at *1-2. Indeed, pursuant to the agreement, when Rand delivered the Ferrari to Boardwalk the next day, the general manager called the IRS agent to confirm that the car was in possession and reaffirm the obligation to hold the sale *392 proceeds pending a resolution between the IRS and Plains Capital. Brief for Appellant Boardwalk Motor Sports, Ltd. at 15.
Having concluded that the levy on Boardwalk granted the IRS a sufficient right of immediate possession over the Ferrari sale proceeds, the remaining elements of conversion would be met.[6] Boardwalk improperly exercised dominion and control over the proceeds and excluded the IRS by improperly sending the funds to Plains Capital. After the dealership sent the funds to the bank, the IRS made a final demand for payment from Boardwalk on August 21, 2007, and Boardwalk refused to pay the IRS. Id. at *2.
Similarly, having concluded that Boardwalk is liable for conversion, I would affirm the district court’s finding that Plains Capital is also liable for conversion. Id. at *3. The tax liens attached to the Ferrari sale proceeds and passed with the proceeds' to Plains Capital. Prior to the transfer, Plains Capital had notice of the IRS’s superior lien, but nonetheless accepted the proceeds and benefitted from them, making the bank liable for conversion along with Boardwalk. See In re TXNB Internal Case, 483 F.3d 292, 308 (5th Cir.2007).
B.
I would also affirm the district court’s finding that Plains Capital is not liable for failing to honor a tax levy. While a federal tax lien continues to follow property or its proceeds once attached, thereby extending liability for conversion from Boardwalk to Plains Capital, liability for failing to honor a levy under 26 U.S.C. § 6332(d) is specific to the person upon which a valid levy is served. For the reasons discussed above, there is no evidence that the bank possessed the sale proceeds when the levy was served.[7] Therefore, I would affirm the district court’s finding that the levy served on Plains Capital did not attach to the sale proceeds, which would preclude holding Plains Capital liable for failure to honor a tax levy. Boardwalk Motor Sports, Ltd., 2010 WL 1717994, at *3 (“The IRS levy served on the Bank did not extend to the sales proceeds of the Ferrari because the Bank no longer possessed the sales proceeds when the IRS served the Levy. The Bank did not wrongfully fail to honor the IRS levy because the tax levy never attached to the sales proceeds.”).
*393 IV.
While all parties involved deserve some blame for a well-intentioned plan gone awry, I agree with the result reached by the district court. Because I would affirm the district court’s findings that Boardwalk and Plains Capital are liable for conversion but Plains Capital is not liable for failure to honor a levy, I respectfully dissent.

. Though not binding, the Internal Revenue Manual makes clear that a levy served on a bank only reaches funds that are on deposit when the levy is received and that the funds must be available for the taxpayer to withdraw. See Internal Revenue Manual § 5.11.4.3 — Bank Levies ("The notice of levy only reaches the amount on deposit when the levy is received. Money deposited later is not surrendered, including deposits during the holding period. Another levy must be served to reach this money. Also, the levy only reaches deposits that have cleared and are available for the taxpayer to withdraw.”). The funds received by Plains Capital to pay off the loan were certainly not available for Rand to withdraw.

. The cases cited by the government offer little assistance. In United States v. Cache Valley Bank, 866 F.2d 1242, 1244-46 (10th Cir.1989), the Tenth Circuit disallowed the bank’s right of offset despite the fact that the IRS served a levy before funds were deposited in the account. However, the primary basis for disallowing the offset despite the mistimed service of the levy was that the bank account in question was a checking account over which the taxpayer retained the right to withdraw funds. Thus the bank was merely holding the funds subject to the lien. Not so here where Plains Capital was not simply holding the funds in a deposit account subject to Rand’s right to make a withdrawal. In United States v. Bank of Celina, 721 F.2d 163, 166-67 (6th Cir.1983), the tax liens attached to the taxpayer’s deposit accounts held by the bank over which the taxpayer retained a right to withdraw money and the government "re-lie[d] solely upon its lien to support its claim of entitlement to the monies which the bank applied to the ... loan balances,” by filing a lien foreclosure suit, not an untimely levy served on the bank. Again, this case is distinguishable because here the IRS has not relied on a lien foreclosure suit and because the funds were not held in a deposit account over which Rand had a right of withdrawal. Lastly, in United States v. Donahue Industries, Inc., 905 F.2d 1325 (9th Cir.1990), involved ongoing deposits in an accounts receivable at the bank that was subject to the levy and did not involve payments directed toward an outstanding loan.

. These factual findings by the district court, which were not challenged by Boardwalk or Plains Capital on appeal, are reviewed for clear error. Lehmann v. GE Global Ins. Holding Corp., 524 F.3d 621, 624 (5th Cir.2008).

. The agent's case history notes for July 2, 2007, state: "To Boardwalk Ferrari and served levy on Sales Manager Greg Minor. He confirmed that [Rand's] Ferrari is still not there for sale! ... I do not know reason for [Rand] to continue to tell me it is at the dealership for sale, but is not.”

. Given the facts, circumstances, knowledge, and negotiation of the parties involved, an alternative option would be to hold that while the IRS’s attempt to serve the levy before the Ferrari was in Boardwalk's possession was not effective, the phone call between Boardwalk and the IRS agent that occurred when the car was delivered the next day operated as a constructive successive service of the levy. A holding that the phone call constituted a constructive service of the levy would satisfy all the essential elements of service of a levy— the dealership possessed the document describing Rand’s tax debt; the dealership confirmed to the IRS agent that it was in possession of the car; the IRS agent reiterated the instructions and requirements of the levy, namely that the IRS was claiming a right to the car and any sale proceeds thereof; and that any proceeds were to be held pending instructions from the IRS on how the proceeds were to be distributed. To hold otherwise would simply give legal significance to the formality of the IRS agent driving back over to the dealership to give the general manager a copy of the exact same paper that had been delivered the day before.

. The elements of conversion under Texas law are: “(1) [the plaintiff] legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused.” Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 705 (5th Cir.2009).

. Although this is technically correct based on the current language of the statute, the challenges and inconsistent results of attempting to strictly adhere to the proposition that a levy can only be effectively served when the specific property is in possession was nearly conceded by Plains Capital during oral argument. In response to a question asking how the IRS would ever be able to effectively levy the sale proceeds given that the bank could have immediately applied the funds to Rand's loan at the moment it received the check, counsel responded, "I think if they had served a levy on the bank even prior to the time they received the funds, and then had discussions ...” Oral Argument at 14:44, United States v. Boardwalk Motor Sports, Ltd., No. 11-40871, available at http://www.ca5.uscourts.gov/Oral ArgRecordings/11/11-40871_8-6-2012.wma. Perhaps realizing the danger of giving significance to a levy served prior to the receipt of property, counsel then paused and rephrased her answer to suggest that Boardwalk and the IRS should have coordinated the exact timing of when Boardwalk would deliver the check to Plains Capital. Of course, such coordination could not have happened, given that the IRS had specifically instructed Boardwalk not to transfer the funds to Plains Capital.