**UNITED STATES of America, Plaintiff–Appellant,**

v.

**CACHE VALLEY BANK; Intermountain Region Concrete Construction Co., Inc., Defendants–Appellees.**

No. 86–2432.

United States Court of Appeals, Tenth Circuit.

Jan. 27, 1989.

Robert L. Baker, Atty., Tax Div. (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, Attys., Tax Div., Dept. of Justice, Washington, D.C., and Brent D. Ward, U.S. Atty., for the District of Utah, of counsel, with him on the brief), for plaintiff-appellant.

N. George Daines, of Daines & Kane, Logan, Utah, for defendant-appellee Cache Valley Bank.

Before ANDERSON, TACHA, and BRORBY, Circuit Judges.

PER CURIAM.

The issue presented in this appeal is whether a federal tax lien will defeat a bank's right of setoff irrespective of the timing of the filing of an administrative levy.

We begin with the factual background taken from the district court's opinion in *United States v. Intermountain Region Concrete Co.*, 636 F.Supp. 280, 281–82 (D.Utah 1986):

The facts are undisputed. The defendant Intermountain Region Concrete Company ("Intermountain" or "the taxpayer") was involuntarily dissolved on December 31, 1983. Prior to that time, the Internal Revenue Service made a series of tax assessments against Intermountain for unpaid federal employment taxes. The assessments totalled $92,256.70. The first assessment was made on September 1, 1980. The government properly filed notice of a tax lien arising from that assessment on December 17, 1980. Intermountain failed to pay the assessments upon demand.

More than two years before the first tax assessment, on May 5, 1978, the North Park Bank of Commerce, the defendant bank's predecessor in interest, authorized a secured loan to Intermountain for $70,000 (the "secured loan"). A financing statement listing the collateral for the secured loan was duly filed with the Secretary of State of Utah on May 15, 1978. The collateral included equipment, inventory and accounts receivable, as well as the proceeds thereof. On October 8, 1980, and on January 16, 1981, the North Park Bank authorized two more loans of $12,500 and $25,000 (respectively, loans "269 U" and "270 U", or, collectively, the "unsecured loans") (footnote omitted). The loan documents for the unsecured loans provide that the bank "may offset" against those loans "any bank account or any other amounts owed by Bank in any capacity" to Intermountain. Intermountain maintained both a checking account and a savings account with the defendant bank. The

bank claims the right to apply any balance in those accounts toward the balance of the unsecured loans.

At or about 9:20 a.m. on July 27, 1981, the bank received notice of an IRS levy purporting to attach all property of Intermountain then in the bank's possession. The bank's vice president, Michael Gomm, examined Intermountain's accounts and determined that its funds on deposit at that time were negligible (footnote omitted). Accordingly, Mr. Gomm returned the notice of levy to the IRS with the notation, "7/27/81, 9:30 a.m.; MG, NO FUNDS AVAILABLE." Later that same day, deposits totalling $28,-416.06 were made to Intermountain's checking account. Those deposits included a check for $27,000 from Interwest Construction Company in payment for services rendered by Intermountain. Understandably alarmed by the notice of levy, the bank on July 28, 1981, offset the entire amount in Intermountain's checking account—$29,614.41—against loans 269 U and 270 U (footnote omitted). The IRS now seeks to recover that amount from the bank.

The government filed this action to enforce the tax lien under 26 U.S.C. § 7401, *et seq.*, claiming the $29,614.41 as subject to the tax lien. The bank's position is that *both* the tax lien and the levy must attach or be served before the bank has exercised the right of offset and that if the setoff occurs after the lien is filed but before the levy is served, the bank is entitled to keep the funds.

■ In applying the Federal Revenue Act, state law controls in determining the nature of the legal interest which the taxpayer has in the property. *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985); *Aquilino v. United States*, 363 U.S. 509, 513, 88 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *Bigheart Pipeline Corp. v. United States (IRS)*, 835 F.2d 766, 767 (10th Cir.1987). Once the court rules that property or the rights to it exist under state law, the consequences are governed by federal law, *National Bank of Com-*

*merce*, 472 U.S. at 727, 105 S.Ct. at 2928; *Aquilino*, 363 U.S. at 513–14, 88 S.Ct. at 1280; *United States v. Bell Credit Union*, 860 F.2d 365, 367 (10th Cir.1988); *United States v. Central Bank of Denver*, 843 F.2d 1300, 1304 (10th Cir.1988) (*Central Bank*), including the priority of a tax lien against other claims to the property. *United States v. Wingfield*, 822 F.2d 1466, 1473 (10th Cir.1987).

■ The district court determined that under Utah law the relationship between a bank and a depositor is generally that of a debtor to a creditor, citing *Walker Bank & Trust Co. v. First Security Corp.*, 9 Utah 2d 215, 341 P.2d 944, 946 (1959). *United States v. Intermountain Region Concrete Co.*, 636 F.Supp. at 284. Under this widely accepted principle, the depositor retains a right to withdraw those funds, which is usually described as a chose in action. *Id.; see also Central Bank*, 843 F.2d at 1304; *United States v. Third Nat'l Bank*, 589 F.Supp. 155, 157 (M.D.Tenn.1984). A chose in action is property or rights to property within the meaning of 26 U.S.C. §§ 6321 and 6331. *United States v. Citizens and Southern Nat'l Bank*, 538 F.2d 1101, 1105–07 (5th Cir.1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1579–80, 51 L.Ed.2d 792 (1977). *See also United States v. Bank of Celina*, 721 F.2d 163, 167 (6th Cir.1983); *Trust Co. of Columbus v. United States*, 735 F.2d 447, 449 (11th Cir.1984).

■ The federal tax lien arises when unpaid taxes are assessed, *United States v. Bell Credit Union*, 860 F.2d at 367, and continues until the resulting liability is either satisfied or becomes unenforceable through lapse of time. 26 U.S.C. § 6322. One effect of the tax lien is that a third party (here the bank) holds the property subject to the lien unless the third party has a prior lien or comes within one of the exceptions of 26 U.S.C. § 6323. *United States v. Bank of Celina*, 721 F.2d at 166. The lien also attaches to after-acquired property. *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). The transfer of property subsequent to the attachment of the lien (here the bank's setoff) does not affect the lien

because no matter into whose hands the property goes, the property passes cum onere, or with the lien attached. *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958); *United States v. Bank of Celina,* 721 F.2d at 167; *United States v. Oil Resources, Inc.,* 817 F.2d 1429, 1433 n. 3 (9th Cir.1987); *see also Gramercy Enters. v. United States,* 643 F.Supp. 687, 689 n. 2 (D.Utah 1986) (citing Treas.Reg. § 301.6321–1).

■ The deposit made to taxpayer's account on July 27, 1981, was made already impressed with the federal tax lien. *United States v. Bank of Celina,* 721 F.2d at 167. The question then becomes whether the bank possessed a claim or interest sufficient to defeat the federal lien. The bank does not argue and the district court did not determine that the bank was possessed of a *lien* interest superior to the federal lien. Rather, the district court held that the taxpayer, because of its loans from the bank, did not have an unrestricted right to withdraw funds on deposit. *United States v. Intermountain Region Concrete Co.,* 636 F.Supp. at 285. The court then concluded that because the bank *could have offset* any funds in the taxpayer's account against the outstanding loans, the bank's interest was superior to that of the government. We disagree.

The *levy* itself is effective only against those funds present in the taxpayer's account at the time the levy was received. *United States v. Bank of Celina,* 721 F.2d at 166; 26 U.S.C. § 6331(b). But this does not alter the fact that the lien attached to the deposits in the taxpayer's account *before* the bank exercised its right of setoff. As we noted in *Central Bank,* 843 F.2d at 1310:

Absent some discrete act by [the bank] to proscribe the taxpayer's control or constructive possession of the account, the Government could attach the account and "step into the shoes of the taxpayer" with regard to the property right to the account. (Citation omitted.)

*See also United States v. Wingfield,* 822 F.2d at 1475 (at instant tax lien attached, taxpayer had cognizable interest in property); *United States Bank of Celina,* 721 F.2d at 167; *United States v. Sterling Nat'l Bank & Trust Co.,* 494 F.2d 919, 922 (2d Cir.1974) (until bank restricts customer's right to withdraw funds, bank holds customer's property or right to property).

In *Central Bank,* the court was confronted with both a properly filed tax lien and a notice of levy served on the bank at the time there were funds on deposit in the taxpayer's account and before the bank had exercised its setoff rights. In this case, only the filing of the government's lien prior to the bank's setoff is at issue. However, as in *Central Bank,* the loan agreements in this case place no restrictions on the taxpayer's right to withdraw funds from its bank account. *United States v. Central Bank,* 843 F.2d at 1302; *see also United States v. Bell Credit Union,* 860 F.2d at 368. Where a deposit account is currently vulnerable to a bank's setoff right but the bank has not chosen to exercise this right, the depositor's interest is still property or the rights to property within the meaning of 26 U.S.C. §§ 6321 and 6331. *Peoples Nat'l Bank v. United States,* 608 F.Supp. 672, 676 (W.D.Wash. 1984), *aff'd,* 777 F.2d 459, 462 (9th Cir.1985) (unexecuted right of setoff does not defeat tax lien). *See also United States v. Third Nat'l Bank,* 589 F.Supp. at 158 n. 3 (court in dicta would have found government's lien had priority over bank's interest). Finally, we note that under 26 U.S.C. § 7403(a) an action to foreclose a tax lien may be filed "whether or not levy has been made."

We hold that when the bank exercised its right to offset taxpayer's debt against the bank deposits, the lien had already attached. Thus, the bank took the deposits subject to the tax lien. *United States v. Bank of Celina,* 721 F.2d at 167–68. Because the tax lien arose prior to the bank's exercise of its right to offset, the government is entitled to the amount sought in the lien foreclosure action. *United States v. Bank of Celina, supra; Central Bank, supra.*

The judgment of the United States District Court for the District of Utah is RE-

VERSED, and the matter is REMANDED for determination of the interest to which the government is entitled.