**WESTERN NATIONAL BANK, ODESSA, TEXAS, Plaintiff,**

v.

**UNITED STATES of America, Comptroller of Public Accounts for the State of Texas, 3–B Rattlesnake Refining Corp., and Enron Oil Trading & Transportation Company, Defendants.**

**No. MO–92–CA–109.**

United States District Court, W.D. Texas, Midland–Odessa Division.

Jan. 7, 1993.

**704**

Jeffrey F. Thomason, Todd, Barron & Thomason, P.C., Odessa, TX, for plaintiff.

Gregg D. Stevens, Dept. of Justice, Dallas, TX, for U.S.

Erwin S. McGee, Attorney's Gen. Office, Austin, TX, for Comptroller of Public Accounts for the State of Tex.

Wiley France James, III, Bernard Robert Given, II, Mounce & Galatzan, Randy Lee, Richard, Lee, Rowley & Cobb, El Paso, TX, for 3–B Rattlesnake Refining 1990 Ltd.

Wiley France James, III, Bernard Robert Given, II, Mounce & Galatzan, El Paso, TX, for 3–B Rattlesnake Refining Corp.

Rodney W. Satterwhite, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, TX, for Enron Oil Trading and Transp. Co.

## MEMORANDUM OPINION AND ORDER

BUNTON, Senior District Judge.

BEFORE THIS COURT are Defendants, UNITED STATES OF AMERICA and the STATE OF TEXAS, each with their Motions for Summary Judgment. This is an Interpleader action. Western National Bank ("Western") interpleaded $205,902.88 which Western held in a lockbox account at its bank. Western, 3–B Rattlesnake Refining (1990) Ltd. ("3–B Ltd."), 3–B Rattlesnake Refining Corp. ("3B Corp.") (3B Ltd. and 3B Corp. being referred to collectively on occasion as "3B") and Enron Oil Trading and Transportation Company ("Enron") have disclaimed any interest in the funds. The dispute is strictly between the State of Texas ("State") and the United States. Western brought suit in state court and the

United States timely removed it to this court.

## QUESTION PRESENTED

Whether the Federal tax liens take priority over the liens of the State?

## THE COURT'S ANSWER

Yes, the United States Government's liens were in existence and filed prior to the liens of the State of Texas. Therefore, the Federal liens are superior to the State's.

## FACTUAL AND PROCEDURAL BACKGROUND

To secure a crude oil supply for its refining facility, 3B executed a U.C.C.–1 to Enron in August, 1991. 3B defaulted with respect to its first monthly payment and the security arrangement between the parties was wholly renegotiated. Enron insisted 3B pledge or directly assign its accounts receivable to Enron. This pledge was effectuated with a "lock box" account arrangement with Western on or about November 21, 1991. The arrangement provided all 3B invoices would direct customers to remit payment directly to Western, Western in turn deposited the accounts receivable into a certain lock box which would be owned and controlled by Enron. Only Enron employees were signatories on the account.

The 3B accounts receivable which funded the lock box account were composed of both "accounts receivable" ("proceeds" of diesel and gasoline sold) as well as state and federal motor fuels taxes. Between November, 1991 and February 14, 1992, literally millions of dollars were paid into the "lock box" account.

3B's customers, who owed money to 3B, made their checks payable to 3B and remitted their payment to the lock box. 3B would then credit the customer's account for the amount of the payment. 3B had no access to the account and could not remove the funds from the lock box absent an order of the court. If a check was returned due to insufficient funds, the re-

turned check would be sent to 3B. If a customer was late in making a payment to the lock box, 3B could compel payment through legal recourse.

On September 10, 1991, December 23, 1991, March 23, 1992, and May 21, 1992, 3B Ltd. and 3B Corp. were assessed federal excise taxes in the amount of $2,393,466.00.

On April 22 and 23, 1992, the Internal Revenue Service ("IRS") recorded its Notice of Federal Tax Lien against 3B Ltd. and 3B Corp. in the personal and real property records of Ward County, Texas. The IRS recorded its Notice of Federal Tax Lien against 3B Ltd. and 3B Corp. in the Office of the Secretary of State, State of Texas on May 8, 1992. The State filed its Notice of tax lien on May 11, 1992. The State froze the funds in the lock box account on May 22, 1992. On June 15, 1992, the IRS levied on the account at Western.

Western responded to this course of events by filing this Interpleader action on July 6, 1992 in the District Court of Ector County, Texas. Western sued the United States, the Comptroller of Public Accounts, 3B Ltd., 3B Corp., and Enron. The United States then removed the action to this Court. 3B Ltd., 3B Corp., and Enron have disclaimed any rights to the funds.

### ARGUMENTS

1. The United States contends its lien is superior to the lien of the State of Texas on the lock box. The State of Texas contends its lien is superior to the lien of the United States.

Section 6321 of the Internal Revenue Code of 1986 provides that a federal tax lien attaches to all property or rights to property, whether real or personal, belonging to the taxpayer. Unless the liability is paid within 10 days of the notice of assessment, this lien attaches automatically at the time of assessment and continues until the liability for the amount so assessed is satisfied or becomes unenforceable due to lapse of time. 26 U.S.C. § 6322.

■ Section 6323 of the Internal Revenue Code of 1986 governs the validity and priority of federal tax liens. The Internal Revenue Code governs how the IRS perfects its federal tax lien. In order for a lien to be valid it does not have to be filed. It is silent and is always given priority unless one of the exceptions contained in Section 6323 applies. Filing a notice of federal tax lien does not do anything but give notice to the world the IRS has a lien against the taxpayer. It does not affect the validity of the lien. The IRS filed its notices of lien in Ward County, Texas, and with the Texas Secretary of State on April 23, 1992, and May 8, 1992, respectively. The State filed its lien on May 11, 1992.

■ It is well established a federal tax lien once filed, follows the property of the taxpayer, no matter into whose hands the property goes. *See United States v. Bank of Celina,* 721 F.2d 163 (6th Cir.1983). In *Texas Commerce Bank—Fort Worth v. United States,* 896 F.2d 152 (5th Cir.1990), the Court held the basic priority rule of "first in time, first in right" continues, unless Congress has created a different priority rule to govern the situation. *Id.* at 161. Further, in *United States v. Cache Valley Bank,* 866 F.2d 1242 (10th Cir.1989), the Court held the transfer of property subsequent to the attachment of the lien does not affect the lien, because no matter into whose hands the property goes, the property passes with the lien attached. *Id.* at 1245. The Court in *Cache* analyzed whether the bank possessed a claim or interest sufficient to defeat the federal lien. The Court concluded the bank did not, because the lien attached to the deposits in the taxpayer's account before the bank exercised its right of set-off. The Court further held the bank took the deposits subject to the tax lien, because the lien had already attached at the time the deposit was made. *Id.*

■ The IRS does not have to levy to perfect its lien over both personal and real property. This perfection is completed at the time the IRS files its Notice of Federal Tax Lien. *See United States v. Eglin,* 1973 WL 544 *2 (C.D.Cal.).

In *United States v. Donahue Industries,* 905 F.2d 1325 (9th Cir.1990), the court held a federal tax lien attaches to a taxpayer's

property when unpaid taxes are assessed, and continues to attach until either the tax is paid or the lien becomes unenforceable because of lapse of time. *Id.* at 1330–31. The lien continues to attach to a taxpayer's property regardless of any subsequent transfer of the property. Thus, under the Treasury Regulations, property subject to a federal tax lien which has been sold or otherwise transferred by the taxpayer may be seized while in the hands of the transferee or any subsequent transferee. *See* Treas.Reg. §§ 301.6331–1(a)(1).

■ It is clear for a federal tax lien to exist, it is not necessary the notice of lien be filed. The lien arises as a matter of law. The only time it is important whether a tax lien is filed is if the priority provisions contained in Section 6323 are in question. *See* 26 U.S.C. § 6323.

■ In the above-captioned cause the tax lien attached by operation of law against the property of 3B Ltd. and 3B Corp. on September 16, 1991, December 23, 1991, and March 23, 1992. Thus, any sale 3B made after September 16, 1991, the corresponding receivable was immediately impressed with the tax lien. Therefore, the lien followed the payments into the lockbox and could not be severed.

The only purpose of filing the Notice of Federal Tax Lien is to give third party notice of the lien. Since the notice of the lien of the United States was filed prior to the State even obtaining their lien, the United States' interest is greater than that of the State. The fact the United States did not file its tax liens until April and May of 1992 is irrelevant. The United States liens attached first and its interest is superior to that of the State. In addition, the State did not file its lien until May 11, 1992, three days after the IRS filed with the Secretary of State and two and one-half weeks after the IRS filed its Notice of Lien in Ward County. Thus, the IRS was first in time and as such is first in right.

■ The State argues 3B no longer had any interest in the money. The Court finds this argument to be without merit. Although 3B could no longer physically ob-

tain the funds once they passed into the lock box, it still had an interest in the funds. The funds were payments from 3B's customers. Such funds were credited to 3B's account with Enron. If a customer failed to pay, 3B had a legal remedy to ensure payment. Moreover, if Enron removed the funds and did not apply the proceeds to 3B's account, 3B would have a cause of action against Enron for misappropriation of funds. Thus, this Court finds 3B had a sufficient interest in the funds deposited in the lock box for the IRS' lien to attach.

Based on the above discussion this Court is of the opinion the IRS lien is superior to the lien of the State of Texas. Thus, the IRS is entitled to the funds. Accordingly,

IT IS ORDERED Defendant, the United States of America's Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED the State of Texas' Motion for Summary Judgment is hereby DENIED.

IT IS FURTHER ORDERED each Party shall bear its own Costs.

IT IS FURTHER ORDERED the above-captioned cause be and is hereby DISMISSED.