# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2012

No. 11-40871

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOARDWALK MOTOR SPORTS, LIMITED,
Doing Business as Boardwalk Ferrari;
PLAINS CAPITAL CORP., Doing Business as Plains Capital Bank,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Texas

Before REAVLEY, SMITH, and CLEMENT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

A bank named Plains Capital Corporation ("Plains Capital") and Board-walk Motor Sports, Limited ("Boardwalk"), appeal a judgment finding them liable for conversion of the proceeds from the sale of a car that was subject to a tax lien. Boardwalk sold the car and gave the proceeds to Plains Capital to get

No. 11-40871

Plains Capital to release the title, and Plains Capital applied the money to the taxpayer's debt. The IRS attempted to obtain the proceeds by levy after Plains Capital had applied the money to the debt, so Plains Capital claimed it no longer had any of the property. The IRS sued Plains Capital and Boardwalk for conversion and failure to honor a tax levy.[1] The district court found that both were liable for conversion, but Plains Capital was not liable for failure to honor a tax levy. The district court also assigned pre- and post-judgment interest at the rate for tax cases. Because neither party is liable for conversion under Texas law, but Plains Capital is liable for failure to honor a tax levy, we reverse and remand.

I.

In 2002 and 2003, the Internal Revenue Service ("IRS") assessed Gregory Rand's outstanding federal income tax liabilities for 2000 through 2002. In 2003 and 2004, the IRS filed notices of federal tax liens, listing total liabilities over $3 million. In 2005, Rand obtained a $200,000 line of credit from Plains Capital, which took possession of the title to his 2005 Ferrari to secure its lien. Plains Capital was aware of the tax lien.

In June 2007, Rand agreed to sell his 2005 Ferrari as part of paying off his tax liabilities. Rand and IRS Revenue Officer Melvin Schwartz agreed that Boardwalk would sell the car. Schwartz called Plains Capital on June 29 to discuss their respective liens, but they did not reach an agreement. The IRS served a notice of levy on Boardwalk on July 2, and Schwartz told Greg Minor, Boardwalk's manager, that the proceeds were to be delivered to the IRS.

On July 3, Rand delivered his Ferrari to Boardwalk and signed a consign-

---

[1] The IRS abandoned its claim that Boardwalk had failed to honor a tax levy.

No. 11-40871

ment agreement that allowed Boardwalk to sell the car. Boardwalk called Schwartz and told him the car had been delivered. Schwartz specified that no proceeds should be released until the IRS and Plains Capital had agreed on how to distribute the funds, and if Boardwalk was unsure to whom to pay the proceeds, it should interplead the two parties.

On July 25, Boardwalk sold the vehicle for $210,454. Boardwalk contacted the IRS, but Schwartz was on vacation. On August 7, Boardwalk sent Plains Capital a check for $194,982 to pay off Plains Capital's lien and obtain title. Boardwalk kept a commission, deducted costs, and gave the rest to the IRS, then applied the funds to Rand's debt on August 16 and released its lien.

Schwartz claimed he learned of the Ferrari's sale on August 20—though Boardwalk claims he learned on August 6—and the IRS served a final demand for payment on Boardwalk on August 21. The IRS served a notice of levy on Plains Capital on August 28 and a final demand for payment on October 18.

II.

The IRS sued Plains Capital and Boardwalk for failure to honor a federal tax levy and for tortious conversion. Following a bench trial, the court held that the IRS had perfected its interest in the car and that its lien was superior to Plains Capital's. The court also held that applying the proceeds to Rand's debt was conversion, but because Plains Capital had applied the proceeds before receiving the IRS's levy, the court found Plains Capital not liable for failure to honor a levy, given that it no longer possessed the proceeds. The court awarded pre-judgment and post-judgment interest against Boardwalk from August 7, 2007, and against Plains Capital from August 17, 2007, the dates on which each

3

No. 11-40871

received the proceeds from the sale. After Plains Capital and Boardwalk's motion for a new trial was denied, they appealed.

III.

The IRS lacked an immediate right to possession under Texas law, thereby preventing it from winning a common-law conversion claim against Boardwalk. Conversion occurs when, wrongfully and without authorization, one assumes and exercises control and dominion over the personal property of another, either inconsistently with or to the exclusion of the owner's rights. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). To succeed on a conversion claim under Texas law, the plaintiff must prove that "(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused." *Id.*

Conversion claims for money must meet additional requirements. "An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." *Hous. Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Specifically, "[a]ctions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (internal quotation marks omitted). Furthermore, "a party that benefits from proceeds subject to a statutory lien may be liable for conversion of such proceeds

4

No. 11-40871

only if it has notice of the lien, then accepts and benefits from the proceeds." *Id.*

The primary point of contention is whether the IRS legally possessed the property or was entitled to it. "A federal tax lien . . . is not self-executing, and the IRS must take [a]ffirmative action . . . to enforce collection of the unpaid taxes." *EC Term of Years Trust v. United States*, 550 U.S. 429, 430-31 (2007) (internal quotation marks omitted). Until the IRS takes additional action, such as serving a levy or instituting foreclosure proceedings, it does not have the right to take possession of the property. The levy gives the IRS a legal right to seize the property. 26 U.S.C. § 6331(b) ("The term 'levy' as used in this title includes the power of distraint and seizure by any means."). Because the levy was served on Boardwalk before it had possession of the car, the levy was ineffective to give it possession. § 6331(b) ("[A] levy shall extend only to property possessed . . . at the time thereof."). Without a valid levy, the IRS did not have possession of the vehicle or the proceeds from its sale.

Texas cases require ownership, possession, or the right of immediate possession to prevail on a conversion claim.[2] Despite numerous citations, the IRS fails to present any successful Texas conversion claim where the plaintiff neither

---

[2] *E.g.*, *City of Wichita Falls v. ITT Comm'l Fin. Corp.*, 827 S.W.2d 6, 8 (Tex. App.—Fort Worth 1992), *reversed in part on other grounds*, 835 S.W.2d 65 (Tex. 1992) ("Either ownership, possession, or the right of immediate possession of the property to the party aggrieved is a requirement for an action in conversion"); *P&T Mfg. Co. v. Exch. Sav. & Loan Ass'n*, 633 S.W.2d 332, 333 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) ("Conversion is concerned with possession, not title . . . . P&T is admittedly not the owner . . . . We hold that absent a judicial foreclosure P&T does not have any right to the legal possession of the cabinets and countertops. We conclude, therefore, that P&T has failed to establish a cause of action for conversion . . . ."); *Lone Star Beer, Inc. v. Republic Nat'l Bank of Dall.*, 508 S.W.2d 686, 687 (Tex. Civ. App.—Dallas 1974, no writ) ("In order to recover on a theory of conversion, it is necessary . . . [to] prove one of three things, that being, that it is the owner of the property converted or that it had legal possession of the property so taken or that it is entitled to possession.").

## No. 11-40871

owned nor was entitled to immediate possession of the property converted.

Recognizing it lacked an immediate right of possession, the IRS attempts to force two exceptions into Texas common law. First, it argues that the first element of conversion is satisfied by having "some character of ownership interest in the specific property converted." *Mack v. Newton*, 737 F.2d 1343, 1355 (5th Cir. 1984). The *Mack* court supported that statement with citations to multiple Texas cases. Almost every case cited, however, explicitly requires ownership, legal possession, or being entitled to possession. Even the few cases that state a potentially looser standard still require an immediate right to possession.[3] In *O'Connor v. Fred M. Manning, Inc.*, 255 S.W.2d 277, 278 (Tex Civ. App.—Eastland 1953, writ ref'd), the court stated a generally worded standard: "In order for a purchaser to maintain an action for conversion it is necessary to allege and prove facts showing that he had, at the time of the alleged conversion, acquired some right or title to the identical goods or chattels claimed to have been converted." But the court then rejected the conversion claim, because the contract of sale did not appear to show passing of title or possession. Despite the IRS's contention, Texas caselaw prohibits conversion claims by parties without an immediate right to possession of the allegedly converted property.

Second, the IRS cites *TXNB*, 483 F.3d at 308, for the proposition that a party that benefits from proceeds subject to a statutory lien may be liable for

---

[3] Some cases state the broad standard, followed by the narrow one, suggesting that despite whatever grand language is used, Texas requires at least an immediate right to possession. *See Catania v. Garage De Le Paix, Inc.*, 542 S.W.2d 239, 241-42 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) ("It is essential that the plaintiff establish some interest in the property as of the time of the alleged conversion, such as title or otherwise some right to possession. . . . A plaintiff who has not shown title or some other right to possession of the property allegedly converted may not maintain a suit in conversion.").

No. 11-40871

conversion. That case does not help the IRS avoid the ownership requirement; it states that "a party that benefits from proceeds subject to a statutory lien may be liable for conversion of such proceeds only if it has notice of the lien, then accepts and benefits from the proceeds."[4] *Id.* That quotation does not focus on who is able to bring a conversion suit against such a benefiting party; the court discussed when a party able to sue in conversion can recover against another party because that other party benefited from converted funds. That decision does not grant every statutory lienholder the right to sue for conversion regardless of how meager a property interest it holds.

Examining the precedent supporting that misused quotation makes plain that we furnished no exception to Texas's requirement of an immediate right to possession. In *TXNB*, we cited the above-quoted proposition to *Home Indemnity Co. v. Pate*, 814 S.W.2d 497, 498-99 (Tex. App.—Dallas 1986, no writ), which, like the cases *Home Indemnity* in turn relied upon, concerned an insurance carrier's subrogation lien. That type of lien provides the carrier ownership of the funds, *Fort Worth Lloyds v. Haygood*, 246 S.W.2d 865, 869 (Tex. 1952), and so fails to show ownership or possession are not required. *TXNB* does not support a lienholder's ability to sue for conversion without ownership or a right to immediate possession.

Moreover, although one authority states that a lienholder may generally

---

[4] In addition to the legal problems with the IRS's arguments relying on *TXNB*, its argument even fails against Boardwalk under its own terms. The IRS presents no evidence that Boardwalk benefited from the converted funds. No one disputes that Boardwalk was entitled to its commission, and other than that, the IRS has not identified that Boardwalk accepted or benefited from the proceeds. Boardwalk gets the commission from the sale no matter whom the money goes to; that commission is merely a percentage of the proceeds and is collected before the proceeds are sent to whomever they belong.

No. 11-40871

sue for conversion even though it is not entitled to possession at the time, 15 TEX. JUR. 3D Conversion § 54, the cases cited for that do not support the IRS's position. The only case of the three cited in that section that directly discuss a lienholder's right to sue for conversion without possession expressly states that "'[l]ienholder' in this instance refers to the party holding a lien under a security agreement and not a lien created by a statute." *Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 644 n.17 (Tex. App.—Austin 1999, no writ).

In a similar case, a Texas court recognized that a state tax lien that did not convey a right of immediate possession cannot provide the ownership interest needed to maintain a conversion action. In *ITT Commercial Financial Corp.*, 827 S.W.2d 6, a city taxing authority had superior liens on a debtor's vehicles, but another corporation, which had a perfected security interest in the vehicles, repossessed and sold them. The city sued for conversion, but the court rejected the argument that the statutory lien gave the city sufficient interest to maintain the action, because without first judicially foreclosing the liens, the city had no immediate right of possession. *Id.* at 10.

To the same effect here, the IRS's interest in the Ferrari—and the proceeds from its sale—were limited to a tax lien. As explained above, a tax lien is not self-executing, and it does not provide the IRS with an immediate right of possession until a levy is issued. Although the IRS needs to utilize only its own administrative procedures to gain a possessory interest in property subject to a tax lien—which is faster and more reliable than the judicial proceedings required of the city in *ITT Commercial*—the result is the same: No immediate right to possession existed at the time of the alleged conversion. Therefore, the

8

No. 11-40871

IRS's conversion claim cannot succeed.[5]

IV.

The IRS sent multiple levies in its attempts to collect the proceeds from the sale of Rand's automobile: one to Boardwalk on July 2, 2007, and one to Plains Capital on August 28, 2007. Under 26 U.S.C. § 6332, any person in possession of property subject to levy upon which a levy has been made must surrender the property to the Secretary on demand. Unfortunately, Boardwalk did not receive the Ferrari until July 3, and no new levy demanded Boardwalk surrender the property after it received the car. After Boardwalk sold the car, it distributed the proceeds to Plains Capital on August 7; Plains Capital then applied the proceeds to pay off Rand's indebtedness on August 16. Having already applied the funds to Rand's indebtedness, Plains Capital argues that by the August 28 levy, Plains Capital held no funds belonging to Rand.

It is well established that a tax lien attaches to a piece of property and anything that is substituted for it.[6] The IRS can follow the proceeds "wherever they can distinctly trace them." *Phelps*, 421 U.S. at 335. Therefore, once the car

---

[5] Because the IRS lacked a right of immediate possession of the car or the proceeds—and cannot succeed on its conversion claim without that right—we do not address Plains Capital's or Boardwalk's additional arguments that the other elements of a common-law conversion claim were lacking, the special requirements for conversion of money were not met, and the IRS consented to Boardwalk's paying the money to Plains Capital.

[6] *Phelps v. United States*, 421 U.S. 330, 334-35 (1975) (determining that a tax lien attaches to a thing and whatever is substituted for it and specifying that the IRS can follow the proceeds wherever they can distinctly be traced); *United States v. Bess*, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.") (internal quotation marks omitted).

No. 11-40871

was sold, the tax lien attached to the proceeds of that sale, enabling them to be levied.[7] Likewise, transferring the proceeds to Plains Capital did not remove the tax lien. *See Bess*, 357 U.S. at 57. Plains Capital, however, then applied the money to Rand's indebtedness; the bank kept the proceeds and discharged the debt, declaring that now the proceeds had been dissipated. As a result, the district court found that by the time the levy had been served, the bank no longer possessed the proceeds.

Two types of property can be levied: (1) property belonging to the taxpayer and (2) property subject to a tax lien. § 6331(a). The IRS cites several cases to show that the lien continues to follow the money, so levy is appropriate.[8] These

---

[7] Plains Capital's argument that the money it received from Boardwalk was not traceable to the sale of the Ferrari, because it was paid out of Boardwalk's working capital rather than directly from the money given by the purchaser of the Ferrari, is without merit. Longstanding precedent establishes that the lien reattaches to "whatever is substituted" for the item. *Sheppard v. Taylor*, 30 U.S. 675, 710 (1831). The money transferred to Plains Capital was treated as the proceeds from the sale: The amount transferred was entirely based on the sale price, and the money was applied to Rand's debt. Working funds were used only because the buyer's third-party financing required clear title to release the money, and Boardwalk felt it needed to give Plains Capital money to ensure clear title. This was just a substitute, the funding provided shortly thereafter by third-party financing.

Accepting Plains Capital and Boardwalk's argument here would mean that merely funneling money through an intermediary would defeat any attempts at tracing or maintaining liens, easily thwarting collection. As a tool of equity, tracing is not so easily restrained by substanceless formalities. "[T]he goal of 'tracing' is not to trace anything at all in many cases, but rather [to] serve[] as an equitable substitute for the impossibility of specific identification." *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (quoting William Stoddard, Note, *Tracing Principles in Revised Article 0 § 9-315(B)(2): A matter of Careless Drafting, or an Invitation to Creative Lawyering*, 3 NEV. L.J. 135, 135 (Fall 2002)).

[8] In *United States v. Donahue Industries, Inc.*, 905 F.2d 1325, 1330-31 (9th Cir. 1990), the court said that if a bank applies funds that are subject to a tax lien to debts the taxpayer owes the bank before the IRS serves a levy, the bank must still turn over that money received from the taxpayer in response to a later levy. "Levy may be made 'upon all property and rights

(continued...)

10

No. 11-40871

decisions reason that even if the taxpayer's property interests are extinguished, the tax lien remains attached to the money after setoff, so a levy is effective. Plains Capital cites cases that suggest that a levy may be ineffective if served after the funds are disbursed, even if a lien had previously attached.[9] The rea

---

[8](...continued)
to property . . . belonging to [a taxpayer] *or on which there is a [federal tax] lien*.' A federal tax lien . . . continues to attach until either the tax is paid or the lien becomes unenforceable because of lapse of time . . . regardless of any subsequent transfer of the property." *Id.* (internal citations omitted)  In *United States v. Bank of Celina*, 721 F.2d 163, 165-66, 169 (6th Cir. 1983), the court held that when a bank extinguishes a taxpayer's property interest in funds by applying those funds to debts the taxpayer owes to the bank, the liens still remain attached to those funds, so the bank must turn over the money in response to a levy.  Finally, in *United States v. Cache Valley Bank*, 866 F.2d 1242, 1245 (10th Cir. 1989), the court held that when a bank exercises its right to offset taxpayer's debt against bank deposits, when those deposits were subject to a tax lien, the government may maintain a lien foreclosure action to recover the funds that were subject to the tax lien before the setoff.

[9] In *United States v. Citizens & Southern National Bank*, 538 F.2d 1101, 1106 (5th Cir. 1976), banks offset taxpayers' balances against debts the taxpayers owed the banks after notice of levy was served.  The court noted that "[s]ince the contractual right of setoff required some discrete act by the banks and neither bank in the present cases performed such an act until after service of notice of the levy, depositors retained property interests in the accounts subject to levy."  The IRS argues that this focus on timing means that if the setoff were performed before the levy was served, the taxpayer's interest would be terminated, and the bank would possess the money safe from levy.

In the same vein, in *Texas Commerce Bank—Fort Worth, N.A. v. United States*, 896 F.2d 152, 158 (5th Cir. 1990), we explained that in previous cases, parties that refused to surrender property to levy took no legally enforceable measures to assert their property interest. The decision highlights that in all the cases in which banks offset taxpayers' deposits against debts owed to the bank, they did so only after the IRS served the banks with a notice of levy, and post-levy setoffs are usually ineffective. *Id.* A Second Circuit decision intimates the same result, stating that money in an account is the taxpayer's property until the bank acts to restrict the account, so all the funds in his checking account were his property at the time the IRS served notice of the levy.  *United States v. Sterling Nat'l Bank & Trust Co. of N.Y.*, 494 F.2d 919, 922 (2d Cir. 1974).  But none of these decisions actually holds that applying the funds to a taxpayer's debt before the levy is served entitles the bank to keep property in the face of a levy.  Another court, in *Congress Talcott Corp. v. Gruber*, 993 F.2d 315, 320 (3d Cir. 1993), explained that proposition more plainly: "In a levy action, if there is no balance remain-
(continued...)

11

No. 11-40871

soning is that offsetting the taxpayer's balance against debts owed to the bank before service of a levy destroys the taxpayer's interest in those funds, so the bank would not be holding any of the *taxpayer's* property. When a bank takes money from the taxpayer and applies it to a debt he owes the bank, the taxpayer has no interest left in the property; his property has gone to the bank in exchange for release from his debt. But those cases fail to address that any property subject to a tax lien can be levied.

Plains Capital contends that applying the proceeds to Rand's indebtedness dissipated the funds subject to a tax lien, so now it holds nothing to which a levy can attach. Plains Capital relies on the statutory requirement that "a levy shall extend only to property possessed and obligations existing at the time thereof." 26 U.S.C. § 6331(b). If it had already dissipated the money when the levy was served, it no longer possessed any money subject to a tax lien, so the levy would attach to nothing. We must determine whether applying the proceeds to the taxpayer's indebtedness before the levy is served constitutes a loss of possession by the bank, rendering a later levy ineffective.

A levy is still effective when issued after a bank has offset the money against the taxpayer's debt, because the money can still be traced to the bank's account. A tax lien reattaches to proceeds wherever they can be distinctly traced. Although Plains Capital asserts that the money was dissipated when applied to Rand's debt, applying the proceeds to the debt does not really dissi-

[9](...continued)
ing in a fund used to satisfy a creditor's outstanding claims, the taxpayer will not be considered to have a 'property interest' in the funds." (That decision is factually less on point than are others, because the tax liens were entered after the bank had obtained security interests in the taxpayers' funds. *Id.* at 316-17.)

## No. 11-40871

pate the funds. A bank uses proceeds to pay off a debt just by keeping the proceeds. No dissipation of funds occurred when Plains Capital offset the proceeds against the debt Rand owed; the bank merely took the proceeds, kept them, and adjusted its records of the amount Rand owed accordingly. The proceeds are still with Plains Capital; only bookkeeping entries were made.

Contrast this with a true case of dissipating funds. Imagine that instead of depositing the money into its account, Plains Capital had taken the proceeds and used them all to buy an extravagant lunch for its employees. Liens attach to property and anything later substituted for that property, *Phelps*, 421 U.S. at 334-35, so the liens attach to the food. But once the employees finish eating, there would be nothing left to which the lien could attach; all the proceeds would have been dissipated.

Plains Capital kept the money but is not refusing to recognize the proceeds as an identifiable fund. As the Tenth Circuit explained in *Henshaw*, 388 F.3d at 741, tracing can serve as "an equitable substitute for the impossibility of specific identification." The proceeds are still in Plains Capital's possession, whether it wants to think of them that way or not, and because we can trace them there, the lien still attaches to them.[10]

Because a levy can claim possession of any property subject to a tax lien, and the proceeds—having not been truly dissipated—are still subject to the lien,

---

[10] Plains Capital's view of dissipation would also unreasonably hamper the collection of unpaid taxes. If a levy is defeated once the bank offsets funds subject to a lien against deposits, banks will begin taking money they know is subject to tax liens and applying it the instant it is received. The IRS would need to be waiting to serve the levy the very moment the money was transferred, because the levy would be ineffective if served either two early or too late. Plains Capital's reading would thus allow banks' internal bookkeeping mechanisms to impose unreasonable limitations on the IRS's power to collect tax revenue.

No. 11-40871

the levy against Plains Capital was effective.  Plains Capital should be found liable for failing to honor that levy.

## V.

Because we find Plains Capital liable for failure to honor a tax levy, interest accrues from the date it failed to honor the levy until the date the judgment is satisfied, at the underpayment rate in I.R.C. § 6621(a)(2).  *See* I.R.C. § 6632(d)(1).  Thus, interest will be assessed beginning on August 28, 2007.

The judgment is REVERSED, and this matter is REMANDED for proceedings as needed.

No. 11-40871

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

I disagree with the majority's conclusions on the conversion and failure to honor a tax levy claims against Boardwalk and Plains Capital. The opinion sows seeds of confusion and reaches inconsistent results by exalting form over substance with respect to the service of the tax levy when discussing the conversion claims while simultaneously taking liberties with the formalities of serving a levy in reaching a conclusion on the failure to honor a tax levy claim.

## I.

Before discussing the specific claims, I note that all three parties in this case bear some blame for sloppiness and poor communication. The IRS likely could have been avoided this litigation had the agent simply served the levy on Boardwalk one day later when the Ferrari was delivered to the dealership. Had the levy been served in a textbook, technically correct manner, there would be no legal question as to whether the IRS had asserted its right to the Ferrari and any sale proceeds thereof, leading to a straightforward conclusion that Boardwalk and Plains Capital improperly handled the sale proceeds in light of the undisputedly valid tax liens and levy.

In retrospect, perhaps the IRS is learning the meaning of the adage that "no good deed goes unpunished." Instead of simply seizing the Ferrari from Gregory Rand and disposing of it at a government auction, the IRS sought to maximize its recovery to benefit both Rand and the United States by arranging a private sale of the car. Now everyone loses—Rand's tax liability is virtually unchanged, the IRS collected an essentially negligible amount of back taxes, and the government has been forced to spend money to litigate, all due to the poor execution of what appears to have been a well-intentioned attempt to maximize recovery of an undisputed tax debt.

No. 11-40871

While the IRS can be faulted for its poor execution, Boardwalk and Plains Capital are far from the blameless participants they attempt to portray in their respective arguments. Boardwalk was an active participant in the preparation and execution of the plan to maximize the value of Rand's Ferrari. Furthermore, Boardwalk knew of and agreed to participate in the plan negotiated between Rand and the IRS to sell the car and was told multiple times that the sale proceeds were to be directed toward Rand's existing tax liens. Yet despite this knowledge and participation, Boardwalk escapes all liability under the majority's opinion by hiding behind the IRS agent's mistake of serving the levy one day too early. Moreover, not only does Boardwalk escape liability for its actions, it benefits from them by keeping the $10,500 commission it received for selling the car.

Plains Capital similarly attempts to portray itself as an unwitting participant in the transaction. The bank paints its conduct as a financial institution that was simply accepting funds on behalf of a debtor to pay off a loan, oblivious to the totality of the situation. By doing so, Plains Capital tries to sidestep the inconvenient details that it made the loan in question with full knowledge of Rand's tax liens that exceeded $3 million and that, therefore, the bank's priority on its lien on the Ferrari was secondary to the existing tax liens. It nonetheless accepted the funds to pay off the loan even after a discussion with the IRS about the relative priority of the tax liens and the loan secured by the Ferrari.

## II.

Moving to the reasoning of the opinion, my concern lies in the potential inconsistencies in what appear to be contradictory conclusions on the conversion and failure to honor a tax levy claims. The crux of the problem is the legal

requirement that "a levy shall extend only to property possessed and obligations existing at the time thereof." 26 U.S.C. § 6331(b). That is, the levy is only effective to the extent that the property or existing obligation being levied is in the possession of the individual or entity upon whom the levy is served at the moment of service. *See* Treas. Reg. § 301.6331-1(a) ("Except as provided in § 301.6331–1(b)(1) with regard to a levy on salary or wages, a levy extends only to property possessed and obligations which exist at the time of the levy."). An "obligation" in the context of the statute "exist[s] when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date." *Id.*

Beginning with the conversion claim, the opinion presents one possible and technically valid, if unsatisfying, result in reversing the district court's finding of liability. Under the majority's reasoning, because the IRS served the levy on Boardwalk one day before Rand delivered the Ferrari to the dealership, the levy was ineffective because the dealership did not possess the car at the time of the levy. Without an effective levy, the IRS could not claim the right of immediate possession to the car or the sale proceeds that is necessary to support a conversion claim under Texas law. Therefore, because the ineffective levy negated a required element for the conversion claims, Boardwalk and Plains Capital are absolved from any liability for conversion. While the opinion also discusses whether the IRS's statutory tax liens might provide the ownership interest necessary to maintain a conversion action, the conclusion of the opinion's discussion makes clear the basis for the decision on conversion liability—the levy was ineffective because it was served too early and therefore the IRS could not claim an immediate right to possession, rendering the conversion claim meritless.

17

No. 11-40871

What concerns me is that the next section of the opinion addressing the failure to honor a tax levy claim against Plains Capital goes out of its way, through the use of tracing and asserting facts not in the record, to avoid the bright line "levy-when-in-possession" rule that was dispositive in reversing the conversion liability findings. To wit, after holding that the levy served on Boardwalk one day *too early* was entirely ineffective, the opinion holds that a levy served twelve days *too late*—after Plains Capital had used the Ferrari sale proceeds and was no longer in possession of the funds—was effective and provides the basis for holding Plains Capital liable on the failure to honor a levy claim.[1]

To rationalize this conclusion and avoid the bright line rule requiring possession at the time the levy is served, the opinion asserts, with no evidentiary basis, that the bank's use of the funds to extinguish Rand's loan twelve days before the levy was served was simply a "bookkeeping entr[y]." The opinion then makes an additional unsupported assertion that "[t]he proceeds are still with Plains Capital," and presumably, given the wording and logic of the statement, may still be with Plains Capital today.

As a practical matter, I agree with the sentiment of the opinion's approach to some extent. It is likely that on the day the bank applied the sale proceeds of $194,982 to Rand's loan, thereby "using" the funds, the internal bank

---

[1]Though not binding, the Internal Revenue Manual makes clear that a levy served on a bank only reaches funds that are on deposit when the levy is received and that the funds must be available for the taxpayer to withdraw. *See* Internal Revenue Manual § 5.11.4.3—Bank Levies ("The notice of levy only reaches the amount on deposit when the levy is received. Money deposited later is not surrendered, including deposits during the holding period. Another levy must be served to reach this money. Also, the levy only reaches deposits that have cleared and are available for the taxpayer to withdraw."). The funds received by Plains Capital to pay off the loan were certainly not available for Rand to withdraw.

transaction was a bookkeeping entry, transferring the received proceeds into some internal deposit account designed to offset the retirement of the liability represented by the loan account. However, the case does not involve a dispute over whether the levy was served at precisely the same moment, or within a few hours, or even within a few days, of when the bank received the sale proceeds and then "used" the funds to extinguish Rand's loan. Instead, it was twelve days later—nearly two weeks—a period long enough that it prevents us from simply asserting without additional evidence that the bank still possessed the funds and thus concluding that the levy was effective.

The opinion's "extravagant lunch" example of dissipating funds is of no assistance in justifying its conclusion. While such a lunch would certainly be one example of dissipation, the bank could have done numerous things with the money in the twelve days before the IRS served the levy on Plains Capital. The bank could have used the money to fund loans to multiple borrowers, to pay the utility bills for the bank's facilities and to pay employees' salaries, or perhaps used to buy fancy toasters that were given away to customers who opened new accounts. Each of these action would have effectively or practically dissipated the funds and resulted in Plains Capital no longer having possession of the Ferrari sale proceeds when the levy was eventually served—thereby negating the core requirement necessary for the levy to be effective. We cannot find Plains Capital liable for failure to honor a levy by assuming, without proof or record evidence offered by the IRS, that the bank received $194,982 and maintained possession by holding it in its own account for twelve days until the levy was served. This is particularly true given that the first section of the opinion holds that lack of possession at the time the levy was served is dispositive in concluding that the levy on Boardwalk was not effective.

19

No. 11-40871

Furthermore, while the opinion's reliance on the ability to trace the funds has a practical appeal, the power to trace must be subject to limits. The opinion offers no such limits, and instead presents an unbounded ability for the IRS to serve a levy long after a bank receives funds, provided the levy is for a sum certain. While money may be considered fungible and it may be theoretically possible to "trace" any specific deposit amount that enters and eventually leaves a bank's accounting system over a long period of time, that does not allow unchecked power to assert that some sum of money "[is] still with Plains Capital" days or weeks after a transaction has occurred.

Even if we circumvent the possession-at-time-of-levy rule by allowing the IRS to trace funds by serving a levy after the bank has "used" the money, the opinion's reasoning has no limiting principle with respect to the time limit on its assumption that "[t]he [traceable] proceeds are still with Plains Capital." Here, the majority implicitly gives its approval to a twelve-day window for the IRS to serve a levy after it receives word that a bank has received funds that might be subject to a tax levy. What the opinion fails to address is where the boundary is for such an action with no further evidence of tracing. Can the IRS serve a levy fifteen days after the funds are received under its assumption that the proceeds used to pay off a loan are merely a bookkeeping entry? 30 days? Even longer? Its not clear what the limit would be if we depart from the rule that the levy must be served while the bank is truly in possession of the funds, i.e. in the time period between when the bank accepts the funds and when the funds are allegedly dissipated, either through a mere bookkeeping entry or by physically

20

No. 11-40871

dissipating the money in some form.[2] And while I share the concern in expressed in the opinion's footnote that such a rule would require that the "IRS . . . be waiting to serve the levy the very moment the money was transferred," such is the challenge of attempting to apply bright line rules to the messy realities of everyday business transactions. What the IRS loses as a result of its untimely levy on a Ferrari that is not at a dealership, it does not gain back by serving an untimely levy on the car's sale proceeds at a bank.

---

[2]The cases cited by the government offer little assistance. In *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244–46 (10th Cir. 1989), the Tenth Circuit disallowed the bank's right of offset despite the fact that the IRS served a levy before funds were deposited in the account. However, the primary basis for disallowing the offset despite the mistimed service of the levy was that the bank account in question was a checking account over which the taxpayer retained the right to withdraw funds. Thus the bank was merely holding the funds subject to the lien. Not so here where Plains Capital was not simply holding the funds in a deposit account subject to Rand's right to make a withdrawal. In *United States v. Bank of Celina*, 721 F.2d 163, 166–67 (6th Cir. 1983), the tax liens attached to the taxpayer's deposit accounts held by the bank over which the taxpayer retained a right to withdraw money and the government "relie[d] solely upon its lien to support its claim of entitlement to the monies which the bank applied to the . . . loan balances," by filing a lien foreclosure suit, not an untimely levy served on the bank. Again, this case is distinguishable because here the IRS has not relied on a lien foreclosure suit and because the funds were not held in a deposit account over which Rand had a right of withdrawal. Lastly, in *United States v. Donahue Industries, Inc.*, 905 F.2d 1325 (9th Cir. 1990), involved ongoing deposits in an accounts receivable at the bank that was subject to the levy and did not involve payments directed toward an outstanding loan.

No. 11-40871

III.

A.

In light of the above discussion, I would affirm the district court's finding of joint and several liability against Boardwalk and Plains Capital for conversion. As stated in the opinion, the IRS needed to take some action to enforce the outstanding tax liens to perfect its right to immediate possession in order to maintain an action for conversion. "A federal tax lien . . . is not self-executing, and the IRS must take [a]ffirmative action . . . to enforce collection of the unpaid taxes." *EC Term of Years Trust v. United States*, 550 U.S. 429, 430–31 (2007) (internal quotation marks omitted). Given the entirety of the facts and circumstances, the record shows that the IRS took multiple affirmative actions to enforce the undisputed tax liens and I would hold that the levy served on Boardwalk validly attached to the obligations under the agreement to sell the Ferrari.

As the record reflects, the IRS negotiated with Rand that, in lieu of seizing the car outright, the Ferrari would be sold in a private sale by Boardwalk. The district court also explicitly found that the IRS had a series of conversations and eventually reached an agreement with Greg Minor, Boardwalk's general manager, that the dealership would sell the Ferrari on behalf of the IRS while authorizing Boardwalk to retain a sales commission from the sale proceeds. *United States v. Boardwalk Motor Sports, Ltd.*, No. 4:08-CV-110, 2010 WL 1717994, at *1–2 (E.D. Tex. Jan. 29, 2010).[3] The agreement between the IRS and Boardwalk also provided that the sale proceeds were to be used to satisfy Rand's

---

[3]These factual findings by the district court, which were not challenged by Boardwalk or Plains Capital on appeal, are reviewed for clear error. *Lehmann v. GE Global Ins. Holding Corp.*, 524 F.3d 621, 624 (5th Cir. 2008).

tax debt and the dealership was not to transfer any sale proceeds to Plains Capital "unless and until the IRS and the Bank agreed on the distribution of funds." *Id.* at *2. As part of the required process to assert its right to enforce the tax liens, the IRS agent served a notice of levy on Boardwalk pursuant to 26 U.S.C. § 6331(a) and (b). The record even shows that the IRS agent persevered despite being misled by Rand about the location of the Ferrari. The agent's case notes reflect that when the levy was served on Boardwalk, the agent went to the dealership with the belief that Rand had already delivered the Ferrari to Boardwalk. Only when he arrived to serve the levy did the agent learn that Rand had deceived him by telling him the car was already there.[4]

While I do not dispute the opinion's conclusion that the levy served on Boardwalk one day before the Ferrari was delivered was ineffective with respect to possession of the car itself,[5] I would conclude that the levy on Boardwalk was effective to assert a right to possess the sale proceeds of the Ferrari under the

---

[4]The agent's case history notes for July 2, 2007, state: "To Boardwalk Ferrari and served levy on Sales Manager Greg Minor. He confirmed that [Rand's] Ferrari is still not there for sale! . . . I do not know reason for [Rand] to continue to tell me it is at the dealership for sale, but is not."

[5]Given the facts, circumstances, knowledge, and negotiation of the parties involved, an alternative option would be to hold that while the IRS's attempt to serve the levy before the Ferrari was in Boardwalk's possession was not effective, the phone call between Boardwalk and the IRS agent that occurred when the car was delivered the next day operated as a constructive successive service of the levy. A holding that the phone call constituted a constructive service of the levy would satisfy all the essential elements of service of a levy—the dealership possessed the document describing Rand's tax debt; the dealership confirmed to the IRS agent that it was in possession of the car; the IRS agent reiterated the instructions and requirements of the levy, namely that the IRS was claiming a right to the car and any sale proceeds thereof; and that any proceeds were to be held pending instructions from the IRS on how the proceeds were to be distributed. To hold otherwise would simply give legal significance to the formality of the IRS agent driving back over to the dealership to give the general manager a copy of the exact same paper that had been delivered the day before.

No. 11-40871

additional language in the relevant section that a levy shall extend to "obligations existing at the time thereof." 26 U.S.C. § 6331(b). As found by the district court, the IRS and Boardwalk reached an agreement for Boardwalk to sell the Ferrari on behalf of the IRS and Rand and to maintain control of the sale proceeds in exchange for payment of Boardwalk's sales commission. *Boardwalk Motor Sports, Ltd.*, 2010 WL 1717994, at *1. These obligations originated over the "series of conversations," *id.*, between the IRS and Boardwalk and were finalized—at a minimum, if not before—at the time the IRS agent served the levy, along with instructions that the sale proceeds were not to be transferred to Plains Capital and for Boardwalk to interplead the proceeds if the dealership had any issues. *Id.* at *1–2. Indeed, pursuant to the agreement, when Rand delivered the Ferrari to Boardwalk the next day, the general manager called the IRS agent to confirm that the car was in possession and reaffirm the obligation to hold the sale proceeds pending a resolution between the IRS and Plains Capital. Brief for Appellant Boardwalk Motor Sports, Ltd. at 15.

Having concluded that the levy on Boardwalk granted the IRS a sufficient right of immediate possession over the Ferrari sale proceeds, the remaining elements of conversion would be met.[6]  Boardwalk improperly exercised dominion and control over the proceeds and excluded the IRS by improperly sending the funds to Plains Capital.  After the dealership sent the funds to the bank, the IRS made a final demand for payment from Boardwalk on August 21, 2007, and Boardwalk refused to pay the IRS. *Id.* at *2.

---

[6]The elements of conversion under Texas law are: "(1) [the plaintiff] legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009).

24

No. 11-40871

Similarly, having concluded that Boardwalk is liable for conversion, I would affirm the district court's finding that Plains Capital is also liable for conversion. *Id.* at *3. The tax liens attached to the Ferrari sale proceeds and passed with the proceeds to Plains Capital. Prior to the transfer, Plains Capital had notice of the IRS's superior lien, but nonetheless accepted the proceeds and benefitted from them, making the bank liable for conversion along with Boardwalk. *See In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007).

B.

I would also affirm the district court's finding that Plains Capital is not liable for failing to honor a tax levy. While a federal tax lien continues to follow property or its proceeds once attached, thereby extending liability for conversion from Boardwalk to Plains Capital, liability for failing to honor a levy under 26 U.S.C. § 6332(d) is specific to the person upon which a valid levy is served. For the reasons discussed above, there is no evidence that the bank possessed the sale proceeds when the levy was served.[7] Therefore, I would affirm the district court's finding that the levy served on Plains Capital did not attach to the sale

---

[7]Although this is technically correct based on the current language of the statute, the challenges and inconsistent results of attempting to strictly adhere to the proposition that a levy can only be effectively served when the specific property is in possession was nearly conceded by Plains Capital during oral argument. In response to a question asking how the IRS would ever be able to effectively levy the sale proceeds given that the bank could have immediately applied the funds to Rand's loan at the moment it received the check, counsel responded, "I think if they had served a levy on the bank even prior to the time they received the funds, and then had discussions . . ." Oral Argument at 14:44, United States v. Boardwalk Motor Sports, Ltd., No. 11-40871, *available at* http://www.ca5.uscourts.gov/OralArgRecordings/11/11-40871_8-6-2012.wma. Perhaps realizing the danger of giving significance to a levy served prior to the receipt of property, counsel then paused and rephrased her answer to suggest that Boardwalk and the IRS should have coordinated the exact timing of when Boardwalk would deliver the check to Plains Capital. Of course, such coordination could not have happened, given that the IRS had specifically instructed Boardwalk not to transfer the funds to Plains Capital.

proceeds, which would preclude holding Plains Capital liable for failure to honor a tax levy. *Boardwalk Motor Sports, Ltd.*, 2010 WL 1717994, at \*3 ("The IRS levy served on the Bank did not extend to the sales proceeds of the Ferrari because the Bank no longer possessed the sales proceeds when the IRS served the Levy. The Bank did not wrongfully fail to honor the IRS levy because the tax levy never attached to the sales proceeds.").

## IV.

While all parties involved deserve some blame for a well-intentioned plan gone awry, I agree with the result reached by the district court. Because I would affirm the district court's findings that Boardwalk and Plains Capital are liable for conversion but Plains Capital is not liable for failure to honor a levy, I respectfully dissent.